STATE *v.* CLARKE *& a.*

A "gift sale" of books according to a scheme by which the books are offered for sale at prices above their real value, and by which each purchaser of a book is entitled, in addition, to a gift or prize, to be ascertained after the purchase by a correspondence, unknown to the purchaser, between certain numbers endorsed on the books offered for sale, and the different gifts or prizes proposed, is a lottery within the meaning of the statute against disposing of property, real or personal, by lottery.

INDICTMENT, charging the respondents with having unlawfully disposed of one ring, of the value of three dollars, by lottery, to one Charles Flanders, at Concord, on the 9th day of November, 1855.

It appeared in evidence that the respondents occupied a shop together on Main street, in Concord; that Flanders, about the last of October, 1855, went into the shop and purchased a book

of William L. Clarke, for which he paid him one dollar. On the back of the book was a number written, to wit, No. 667: That William L. gave the number to Oliver H. Clarke, who was present, and Oliver took a long book, like a cash book, opened it, and placed a piece of zinc on one of its pages. The zinc had a hole cut in it about two or three inches long and one half inch wide. Through this hole Oliver H. looked, and informed Flanders that he was entitled to a gold ring, worth three dollars, which he gave him, and Flanders kept the same.

It appeared further that the book which Flanders received was worth less than one dollar, and that Flanders was induced to go into the store from seeing a handbill headed, " gift book sale."

The defendants excepted generally to this evidence, as incompetent to show that the ring was disposed of by lottery, and contended that the indictment was not sustained by the proof. They also excepted that it did not tend to show them to be jointly guilty, or that William L. was guilty, if Oliver was.

The court overruled the exceptions, and instructed the jury that if they found the ring was disposed of by lot or chance, that there was chance and lot used in determining whether Flanders should have it or not, and he received it accordingly ; and that the respondents acted together in disposing of it, then they were both guilty ; otherwise not. That if they found that William L. was not a participator with Oliver in disposing of the ring, he might be declared not guilty and Oliver guilty ; or they might find William L. guilty and Oliver not guilty, if they believed the evidence showed that William L. alone disposed of the ring.

The jury found each of the respondents guilty, and they moved to set the verdict aside, and for a new trial, for supposed error in the rulings of the court.

*Rolfe & Marshall*, for the defendants.

I. If the respondents were liable to a fine at all, it was under the provisions of chap. 220, R. S., and of its amendment, chap. 1697, P. L.

The provisions of section 1 of the amendment differ somewhat from those of sec. 1, chap. 220, R. S. ; yet it is clear that the difference is very nearly if not quite immaterial in the decision of this case.

Property cannot be disposed of " according to the result of a lottery," unless it is done by lottery, and the phrase, " according to the result of a lottery," is mere surplusage. The words, " directly and indirectly," in the same section, refer to the manner in which the disposition or sale of property by lottery is brought about; whether by the owner in person, or by the intervention of a second or third person ; but in either case the person disposing of or causing the disposition of property by lottery, would be guilty, under the provisions of the former section, and he might not be under the latter section.

II. The word *lottery*, as defined by Webster, is a " scheme for the distribution of prizes by chance," or " the distribution itself." As defined by Worcester, it is " a hazard in which sums are ventured for the chance of obtaining a greater value ;" and by Rees' Cyclopedia it is " a kind of game of hazard, wherein several lots of merchandize are deposited for the benefit of the fortunate."

The distribution of seats and the choice of jurors, or of articles of merchandize, whether the same are made by men by lot, or by children with " cuts," are evidently not lotteries within the meaning of the statute referred to ; nor are all schemes wherein there is a chance of obtaining an increased or larger value by venturing a smaller ; because all pecuniary speculations are founded upon the chance of gain, and in many instances upon the chance of obtaining immense gain.

It is evident that there must be something beside chance, lot or fortune, to constitute a lottery within the meaning of the law ; there must be certain acts done, and certain material things about which such acts are done. *People* v. *American Art Union*, 13 Barber 577, and 584, 585.

III. Property cannot be disposed of by lottery without a drawing of such lottery, and such drawing cannot take place

without tickets, and for such tickets some value must be given, or else the drawing becomes a mere distribution, as of seats. R. S., sec. 2, ch. 220, and P. L., sec. 1, ch. 1697.

When property is disposed of by lottery, the tickets are sold and the lottery is drawn, and then the property is a prize or prizes, and the lottery ceases to exist, and the property has changed hands. *People* v. *American Art Union*, 3 Selden 235; *Woodell* v. *Shotwell*, 3 Zabriskie 465.

IV. This case finds, and the advertisement so stated, that any person, for one dollar, should have a book, such as he might select out of the list, and in addition a gift. When the purchaser paid his dollar, and received his book and gift, the transaction was simply a sale and purchase, and the gift, so called, of whatever value, was a part of the equivalent given for the dollar, and the respondents performed only as they had agreed in their advertisement. Does the case find any other transaction than that just stated ?

The fact that the respondent, Oliver H., after William L. re-received the dollar and gave him the number on the back of the book, took a piece of zinc with a hole in it, placed it upon a long book, looked through it, and then said to Flanders, " You are entitled to a ring," does not change the character of the transaction in the least ; because, from aught that appears, he might just as well have put the zinc upon the floor, and with the same propriety made the same or any other communication to Flanders, provided he had announced a gift of some sort.

If there is a feature of a lottery, or of the disposition of property by lottery, in the transaction stated, or to be deduced from the facts in the case, it is common to the sale of all property, and the purchaser has the same lot or chance of getting more or less than his money's worth.

V. There seems to be no circumstance connected with this case that requires a severer construction of the law than the import of its language will clearly warrant, because the community was advantaged by the books sold.

VI. If the question is reached in the decision of this case as

to whether the respondents are liable, individually or jointly, the doctrine of *Pike* v. *Jenkins*, 12 N. H. 255, would seem to be applicable, because it is evident from the case that but one penalty has been incurred, as there has been but* one sale. The form of action is different, yet the parties are alike liable to the payment of the penalty.

*George & Foster*, for the State.

1. The transaction detailed by the testimony was an unlawful disposition of personal estate by lottery, within the meaning of sec. 1, ch. 220, R. S.

" *Lottery*" is defined by Webster " a scheme for the distribution of prizes by chance, or the distribution itself."

The same lexicographer defines " *lot*," " that which comes, falls or happens ; that which, in human speech, is called chance, fortune, hazard."

" *To draw lots*," he says, is " to determine an event by drawing one thing from a number whose marks are concealed from the drawer, and thus determining an event." See, also, 2 Bouv. Dict. 100.

Purchasers at this " gift enterprise" not only paid for " The Planter's Victim," the " Pirate's Own Book," the " Fisherman's Daughter," and the " Life of Barnum," but also for the written number pasted upon the back of each of these books ; and it was by mere *lot* and blind *chance* that the purchaser in this case selected the book and number corresponding to the number of the prize which he received.

No change of name can alter the thing itself, nor can the ingenious devices resorted to by the respondents change the real character of the transaction in which they were engaged. *Commonwealth* v. *Chubb*, 5 Rand. 715 ; 2 U. S. Dig. 825, No. 32 ; *Commonwealth* v. *Pollard*, Thatcher's Crim. Ca. 280 ; 5 U. S. Dig. 376, No. 9 ; *Almshouse* v. *Art Union*, 3 Selden 228 ; *Woodell* v. *Shotwell*, 3 Zabr. 465 ; 14 U. S. Dig. 429, No. 3 ; *The State* v. *Laighton*, 3 Foster 167.

2. The instructions given to the jury, to the effect that if the

respondents *acted together* in the disposition of the property by lot or chance, then they were both guilty, otherwise not—were correct.

It is difficult to see how the respondents can find an exception to such instructions. *The State* v. *Neal,* 7 Foster 131 ; *Commonwealth* v. *Fitzwood,* 12 Mass. 313 ; 1 Arch. Cr. Pl. 176–2.

PERLEY, C. J.   The provision of the statute on which this indictment is founded is in these terms : " If any person shall make or put up any lottery, or shall dispose of any estate, real or personal, by lottery," he shall be fined not exceeding five hundred dollars nor less than fifty dollars.   Comp. Stat. 561, secs. 1, 2.

The word " lottery" is not a term of the law, and to dispose of real or personal estate by lottery, is not an offence which has a recognized and established legal definition.   In construing the statute we must be guided chiefly by the meaning of the term as it is ordinarily used in a popular sense, and by reference to the mischief intended to be redressed.

There are, however, some cases in which courts of other jurisdictions have been called on to give a construction to recent laws enacted against lotteries.   The annual distribution of paintings by lot among the members of the American Art Union has been held to be a lottery, forbidden by the constitution of New-York.   *People* v. *The Art Union,* 3 Selden 240 ; *Bennet* v. *The Art Union,* 6 Sanford 614.

In *Woodell* v. *Shotwell,* 3 Zabriskie 465, it was held that if a tract of land is divided into lots of unequal value, and these are sold at a uniform price and distributed among the purchasers by lot, it is a lottery.   In *The People* v. *The Art Union,* 13 Barb. 577, it was decided to be unlawful to hold forth to others that he has articles which will be distributed by lot or chance to any person, who, before the distribution, shall have paid any money for the chance of obtaining such article.

The name given to the process and the form of the machinery used to accomplish the object are not material, provided the sub-

State *v.* Clarke.

stance of the transaction is a distribution or disposition of property by lot. In the interpretation of remedial statutes like this, " the office of the judges is to make such a construction as will suppress the mischief and advance the remedy, and to suppress all evasions for the continuance of the mischief." *Magdalen College Case*, 11 Co. 71, b.

From these authorities, and from the common signification of the term, we draw the conclusion, that where a pecuniary consideration is paid, and it is determined by lot or chance, according to some scheme held out to the public what the party who pays the money is to have for it, or whether he is to have any thing, it is a lottery, within the meaning of the statute.

From the evidence reported in this case the jury were well warranted in finding that, according to some scheme upon which the defendants professed to act, there was a correspondence between the numbers placed on the books purchased and the different articles proposed as gifts or prizes, by which, when the book was purchased, the defendants ascertained what gift or prize the purchaser was entitled to have, according to their scheme. The defendants on the evidence appear to have held out that notion to the public, and the jury were at liberty to find that, so far at least, the business was fairly conducted.

The purchaser did not know, when he bought his book and paid his money, what prize or gift the number on it would entitle him to receive, and it was with him as much a matter of lot and chance as if he had drawn the number from a hat.

He paid more than the book was worth, and the excess must be understood to have been paid for this chance. As to the real nature of the contrivance, it stands as if the excess had been paid for the chance, without any sale of a book to color the transaction.

It is objected that, by the purchase of the book, with a number that in some way designated the gift to which the purchaser was entitled, his gift was ascertained at once upon the purchase, and did not depend on any subsequent drawing of lots ; and that, therefore, the case does not fall within the meaning of the

State *v.* Clarke.

term "lottery," as it is ordinarily used, and is not within the statute. But with the purchaser what prize he might obtain was a mere matter of lot and chance. The scheme involved substantially the same sort of gambling upon chances as in any other kind of lottery. It appealed to the same disposition for engaging in hazards and chances with the hope that luck and good fortune may give a great return for a small outlay, and is we think within the general meaning of the word *lottery*, and clearly within the mischief against which the statute is aimed. The instructions of the court on this part of the case appear to have been quite correct.

The evidence was competent and abundantly sufficient to show the concurrence of both the defendants in the transaction. They occupied the shop together; the sale of this particular book was not a solitary act; they carried on together a trade in books on the same plan; this sale of the book and number, and the ascertaining of the gift to which the purchaser, according to their scheme, was entitled, were in the course of their ordinary trade and business. They both actually and actively concurred in the matter. One made the sale and took payment; the other received the number, went through the ceremony of applying the zinc, told Flanders what he was entitled to have by way of gift, and delivered him the ring.

The offence charged in the indictment is made a crime by the statute, and, like most other crimes, may be committed by one man separately, or by two or more jointly.

The conviction was right, and there must be

*Judgment accordingly on the verdict.*