SKIFF v. JOHNSON. { Aug. 11, 1876.

*Referees' report—Illegal sales.*

When the inference which ought to be made from the proved fact is so obvious that the court is convinced that the referee could only have been prevented from drawing it by misapprehending the law, the report will be set aside.

The plaintiffs sold to the defendant goods, with the knowledge that she intended to make an unlawful use of them, and, to enable her to make such unlawful use, by her direction put them up in packages in a convenient form for sales, in violation of law, with labels thereon calculated to facilitate such sales. *Held*, that the parties were *in pari delicto*, and that the plaintiffs could not recover the price.

FROM HILLSBOROUGH CIRCUIT COURT.

ASSUMPSIT to recover an account for goods, wares, and merchandise sold and delivered. Plea, the general issue.

The action was referred under the act of 1874. The referee heard the parties, and reported in favor of the plaintiffs, and, at the request of the defendant, reported the following facts :

" The goods consisted of what is known as prize-package candy. Each package had a label setting forth that, in addition to candy, such package contained something else of value ; but each package did not contain the same kind of articles, or articles of the same value.

" The ordinary purchaser would understand that there were chances for him to get more than the worth of his money, and chances to get less.

" The plaintiffs are wholesale dealers, and the defendant a retail dealer, in these goods. The defendant bought to retail. The defendant knew everything about these goods which the plaintiffs did.

" The goods were put up by the plaintiffs on an express order of the defendant, she directing how the packages should be filled and marked."

Upon the foregoing facts, the plaintiffs moved for judgment, which the court granted ; and the defendant excepted.

Transferred by STANLEY, J., C. C.

*Briggs & Huse*, for the defendant.

The case states fully the scheme of lotteries, of which it finds these plaintiffs manufacturers, in plain violation of the statutory provision. Gen. Stats., ch. 254, sec. 1. It involves substantially the same sort of gambling upon chances as in any other kind of lottery.

" Gift enterprises," " grand distributions," " prize packages," and

the great variety of modern evasions for the continuance of the mischief, are plainly within the meaning of the statute for the suppression of this species of gambling by lottery. A pecuniary consideration is paid ; and it is determined by chance what the party who pays the money is to have for it.

This, according to the decision in *State* v. *Clarke*, 33 N. H. 335, is a lottery within the meaning of the statute. It was *made* and *put up* by the plaintiffs, with the understanding that it should be used for a lottery, with a knowledge that it could be used for no other purpose, and was a deliberate and maturely considered violation of law, extending, as the specification shows, over a period of years.

The first four sections of the chapter referred to forbid, as positively as it is possible for a statute to do, any connection whatever with this species of property, and enact a penalty for selling any interest in such goods, or part thereof; and the law will not aid these plaintiffs in their illegal and immoral traffic. *Smith* v. *Godfrey*, 28 N. H. 384.

By sec. 5 of the same chapter it is an offence, punishable by fine, for any person to sell such goods to individuals who expect to gain thereby, or by retail, as the case finds the defendant did, undoubtedly upon the ground that it is a species of gaming by chance, which tends to the subversion of good morals, and is against public policy. The sale of this species of property being prohibited, all contracts respecting it are void.

The contract between the plaintiffs and the defendant was entered into with a view of enabling the defendant to do what is forbidden by law, and is consequently void. *Hill* v. *Spear*, 50 N. H. 264, and cases cited.

The plaintiffs filled and marked the packages, which they made for the defendant, in such manner as she desired, for the express purpose of enabling her to dispose of them to the best advantage, thus assisting her, by positive acts, in her unlawful purpose.

It is not the case of a party, in the course of a legitimate business, who sells property which he has a legal right to sell, but with bare knowledge that the purchaser intends to use the property so purchased illegally. They not only sell the defendant this contraband property with a full knowledge of the object to which it is to be applied, but they also put up the prize packages in such manner as she directs, making such unusual and extra attractive announcements on the outside thereof as would enable her to carry on the illicit business more successfully, and for the express purpose of accomplishing that result. *Pearce* v. *Brooks*, L. R., 1 Ex., 212.

In *White* v. *Buss*, 3 Cush. 448, it is laid down that any contract, promise, or undertaking, the performance of which would tend to promote, advance, or carry into effect an object or purpose which is unlawful, is in itself void, and will not maintain an action.

In this case, the property which the plaintiffs manufactured and sold by wholesale was incapable of any other use than for the purpose for which it was designed and purchased by this defendant.

The parties were jointly interested in its manufacture and illegal sale, each lending assistance to the other in carrying on an immoral and illegal traffic; and, being *particeps criminis,* the law will not lend its aid to either of them.

*George Y. Sawyer & Sawyer, Jr.,* for the plaintiffs.

The defendant's view of the case would seem to be, that the goods were purchased to be sold by her in violation of law. The case does not so find.

It appears only that the goods consisted of packages of candy, with labels thereon setting forth that the contents were candy and some other article of greater or less value, and so worded that one buying might understand that there was a chance for him to get more or less than his money's worth; and that the packages were filled and made up according to the defendant's directions, she being a retail dealer and the plaintiffs wholesale dealers in the packages.

The selling or offering for sale such a package is not the "making or putting up a lottery or pretended lottery," within the meaning of sec. 1, ch. 254, Gen. Stats. If it falls within the definition of a lottery as given by PERLEY, C. J., in *State* v. *Clarke,* 33 N. H. 335, cited in the defendant's brief, it is to be observed that his definition there given, so far as it might include gift sales, is repudiated by the legislature by the subsequent enactment,—section 5 of that chapter making the sale of one article, with the expectation on the part of the purchaser, founded on "the declaration, publication, or course of business" of the seller, that he was to receive some other article with it, a distinct offence and subject to a different penalty. The candy boy offering his package for sale on the cars no more "makes or puts up a lottery" if the package should contain in addition to the candy a bit of mock jewelry, than if the packages were indiscriminately filled with various kinds, some worth more and some less per pound. Is the sale by railroad officials of the trunks unopened and packages unbroken, which have accumulated on their hands, the "making or putting up of a lottery" because the contents are unknown? If the sales by the defendant at retail of the packages were in any view violations of law, they might possibly fall under the prohibition of section 5 and not of section 1. But the sale by the plaintiffs to the defendant of these packages clearly does not fall within the prohibition, for their sales to her were of packages made up as ordered by her, and there was no expectation by her of receiving any other thing than just what she knew she was receiving.

If the defence in this case were not of the character justly pronounced by FOSTER, J., in *Hill* v. *Spear,* to be "mean, impudent, and contemptible," and had any equities to support it, possibly ground might be discovered, according to the cases from the Vermont and Term Reports cited in *Hill* v. *Spear,* for holding that the plaintiffs participated in the unlawful sales by filling and making up the packages

as was done. Several of these cases were decided on the ground that the seller making the sale expressly agreed to pack the goods in such manner as to deceive the revenue officers, and thus actively aid the purchaser in his evasion of the law. Here no such fact exists, and we respectfully submit that if the ground be taken that the filling and making up the packages is a participation in the unlawful sales, it is too unsubstantial and shadowy to be resorted to for upholding such an iniquitous defence as is here set up.

CUSHING, C. J. "If any person shall make or put up any lottery, or pretended lottery, or shall dispose of or offer, or pretend to dispose of, any money, or property real or personal, by lottery, or in any way such that any hope or expectation of gain by luck or chance is made an inducement to pay for such property, or for any share or chance thereto, he shall be fined from fifty to five hundred dollars." Gen. Stats., ch. 254, sec. 1.

There can be no doubt that these packages might be used in such way as to constitute the offence described in this section ; that is, the purchaser might be induced to purchase in the hope or expectation of gain by luck or chance. This was not the case, however, in regard to the transaction between the plaintiffs and the defendant, because it is expressly found that the defendant knew all about the contents of the packages.

But it is said that the whole transaction between the plaintiffs and the defendant was with a view to the unlawful sale by the defendant of the packages put up for that purpose by the plaintiffs.

According to the case of *Hill* v. *Spear*, 50 N. H. 264, although the plaintiffs would not be affected by the mere knowledge of the unlawful use which the defendant was about to make of the packages, still, if they went further, and at the request of the defendant put up the packages in a convenient form for sales in violation of law, and so actively promoted such sale, they would be, in the eye of the law, offenders ; and in such case the defence here set up, though, according to the authority of that case, " mean and contemptible," would be in law effectual.

Now, there being no dispute about the facts stated, the inference from them that the plaintiffs not only knew of the unlawful use intended to be made of their wares, but actively participated, by their preparation of them by the request of the defendant, is so strong that it seems to me impossible that the referee should have failed to make it, if he had not in some way misapprehended the law. It would seem that he must have followed the *dictum* in *Hill* v. *Spear* instead of the law of the case, holding the maxim to be *ex turpi causa non oritur defensio,* and substituting *defensio* for *actio*—a mistake of *dictum* for law which the reports show to have been more than once committed. I am therefore of opinion that the exception should be sustained.

The remark has often been made by eminent judges, in delivering their opinion in this class of cases, that such defence is not to be

encouraged, or is mean and contemptible, or immoral and dishonest. It does not appear to me that courts of justice have anything to do with such considerations. It is the policy of our law to suppress, as far as possible, the practice of gaming in all its forms. Whether this policy is right, or not, is not a matter for the consideration of this court. A promise by the defendant to pay the plaintiffs for assisting her in the violation of the law, is certainly one which the courts cannot aid in enforcing, and in regard to which juries ought to be so instructed as that they will disregard all such considerations. The proverb,—" Honor among thieves,"—is all very well in ballads of Robin Hood and Friar Tuck, and in fashionable romances of robber life; but the other proverb, —" When rogues fall out honest men get their dues,"—is much more in accordance with the policy of the law, which relies much in its attempts at preventive and punitive justice upon the treachery of knaves towards each other.

So long as we attempt to protect the morals and well-being of society by such penal legislation, defences of this kind, in my judgment, ought to be not merely tolerated but encouraged by the courts. However much we may despise the traitor, it is just that the state should take advantage of the treason.

LADD and SMITH, JJ., concurred.

*Exception sustained.*