Grafton,
Feb. 4, 1936.

## STATE *v.* JOHN B. EAMES.

*Thomas P. Cheney,* attorney-general, and *Dudley Orr,* assistant attorney-general (*Mr. Orr* orally), for the state.

*Henry A. Dodge, Emmett Thurmon* (of Colorado), and *George S. Ryan* (of Massachusetts) (*Mr. Dodge* and *Mr. Ryan* orally), for the defendant.

WOODBURY, J. The authorities are in agreement upon the proposition that three elements must be present in order to constitute a lottery within the meaning of that word as used in criminal statutes. These three elements are, (1) a prize, (2) chance, (3) consideration. Both the state and the defendant agree that the first two elements are present in "Bank Night." The issue between them is over the element of consideration.

The state first suggests that any "consideration sufficient to support a contract at common law is sufficient to make illegal a scheme fulfilling the other requirements of a lottery." Support for this proposition is to be found in *dicta* contained in *Brooklyn Daily Eagle*

v. *Voorhies*, 181 Fed. Rep. 579, and *Equitable Loan &c. Co.* v. *Waring*, 117 Ga. 599. In our opinion detailed discussion of this argument is not required, because our statute (P. L., c. 384, s. 1), definitely requires that in order to constitute a lottery, payment must be given for the opportunity to participate.

This statute reads as follows: "No person shall make or put up a lottery, or pretended lottery, or shall dispose of, or offer or pretend to dispose of, any money or property, real or personal, by lottery, or in any such way that a hope or expectation of gain by luck or chance is made an inducement to pay for such property, or for any share or chance therein." The latter half of this section, beginning "or in any such way . . ." etc., is clearly a partial definition of the word "lottery" which appears just before it. It clearly requires that pay must be given for the opportunity to participate. Although signing one's name in a book or appearing at the theater within five minutes of the time of the drawing might be regarded as consideration, it cannot be called "pay" without warping that word out of all recognition. For the purpose of creating a lottery, consideration must be something of value.

The state's principal contention, however, is that the participants did in fact give something of value for the chance to win the prize. The defendant, on the other hand, asserts that the prize was a donation on his part and that as such was not in violation of the law.

While it is abundantly clear from our statute and from all the authorities that it is perfectly legal to make a gift the recipient of which is selected by chance, it is equally clear that one may not obtain immunity from prosecution under the lottery law by resort to the device of a pretended gift. This subterfuge has been repeatedly before the courts, and in every instance the courts have looked beyond the names used and have dealt realistically with the situation presented.

The usual method employed in the attempt to evade the law by means of a colorable gift is to give chances to draw for a prize to purchasers in connection with the sale of property. This device has been branded as illegal in this state. *State* v. *Clarke*, 33 N. H. 329; *Skiff* v. *Johnson*, 57 N. H. 475. In both of these cases the goods were sold for more than their intrinsic value, but we do not regard this fact as of controlling importance. See *Davenport* v. *Ottawa*, 54 Kan. 711; and 38 C. J. 296.

"Bank Night" does not fall within the authority of the above cases because the purchase of a ticket of admission was not a condition

precedent to the granting of the opportunity to participate in the award. On the other hand, the scheme did, in fact, result in a substantial increase in the sale of tickets of admission. It therefore falls near the border line between lotteries and gifts to recipients who are chosen by chance.

Substantially similar cases have received consideration by other courts but the results have not been uniform. In *Maughs* v. *Porter*, 157 Va. 415; *State* v. *Danz*, 140 Wash. 546; and *Willis* v. *Young* [1907], 1 K. B. 448; such schemes were held to be illegal. On the other hand, in *People* v. *Cardas*, 28 Pac. Rep. (2d) 99; *Cross* v. *People*, 18 Col. 321; *Yellow-Stone Kit* v. *State*, 88 Ala. 196; and *People* v. *Company*, 179 N. Y. S. 640, such schemes were regarded as legal.

The first group of cases cited above proceed upon the theory that the indirect benefits in the way of advertising reaped by the operator of the scheme constitute the necessary consideration, and this in spite of the fact that individual participants were charged nothing for the opportunity to compete for the award. We are of the opinion that such indirect benefits to the one who conducts the scheme cannot be regarded as "pay" within the meaning of our statute.

The second group of cases (and it is the larger), appear to be supported by better reason. They hold that indirect benefit to the operator of the scheme, standing alone, is not enough but that to constitute consideration, individual participants, by and large, must contribute value for the chance. It does not follow from these cases, however, that free participation in name alone is enough to avoid the statute. Participation must be free in actual fact, not in theory only, and giving away a few free chances will not save a scheme otherwise objectionable. *Glover* v. *Malloska*, 238 Mich. 216; *Featherstone* v. *Association*, 10 S. W. Rep. (2d) 124.

The problem presented by "Bank Night" and similar schemes is to determine whether it is an evasion of the statute or an avoidance of it, and this question is essentially one of fact. In answering this question we do not propose to close our eyes to reality. The test by which to determine the answer to this question is not to inquire into the theoretical possibilities of the scheme, but to examine it in actual, practical operation. If, as the state contends in its brief, (although this contention does not appear to be borne out by the agreed facts), "the great majority of people pay for such privilege," then it is an evasion and as such is not to be countenanced. As we understand the actual situation of this case, however, free participation is a reality. If this is so, then regardless of the motive which in-

duced the defendant to give such free participation, the scheme is not within the ban of the statute. Violation is shown only when, regardless of the subtlety of the device employed, the state can prove that, as a matter of fact, the scheme in actual operation results in the payment, in the great majority of cases, of something of value for the opportunity to participate.

Under the agreed statement of facts above summarized in respect to this point it cannot be found beyond a reasonable doubt that the purchase of a ticket of admission is, as a practical matter, a prerequisite to participation in "Bank Night."

The only case passing directly upon the legality of this particular scheme which has come to our attention is *State* v. *Hundling*, 220 Ia. 1369, in which a similar result was reached.

*Information quashed.*

MARBLE, J., was absent: the others concurred.