## GRIFFITH AMUSEMENT CO. v. MORGAN.

### No. 8533.

Court of Civil Appeals of Texas. Austin.

Oct. 28, 1936.

Evans J. Adkins, I. J. Burns, and Wm. J. Gerron, all of Brady, for appellant.

Shropshire & Sanders, of Brady, for appellee.

McCLENDON, Chief Justice.

The controlling question in this appeal is whether an advertising plan, known as "Bank Nite," operated by appellant (a motion picture theater owner), constituted a lottery.

The appeal is from a temporary injunction granted to appellee, a competitor of appellant.

The facts pertinent to the above question follow: Appellant operated two theaters in the town of Brady, named, respectively, the Brady and the Palace. On each Thursday night at 9 o'clock at the Brady appellant conducted a drawing by lot of a cash prize of $25. Chances to the drawing were distributed as follows: A registration book was kept in the lobby of the Brady, in which any person over the age of 16 years and not an employee or member of the family of an employee of appellant might have his name registered. No requirement or request was made that the registrant be a patron of or purchase an admission ticket to either of appellant's

theaters. No charge of any kind was exacted of registrants; any one might register other than those in the stated excepted classes. Opposite each registrant's name was a number; and a ticket with the corresponding number was placed in a box. The drawing was had inside the Brady, by having some person, usually a child, draw one of the tickets from the box. The name of the registrant holding the corresponding number to that drawn was then announced in the Brady. If no claimant was present, the name was then telephoned to and announced in the Palace. If no claimant was present there, the name of the winner was announced outside the Brady. The winner could then enter the Brady free of charge and claim the prize, if he did so within three minutes after the announcement was made. Any registrant would upon request be notified by telephone in case he was the winner; in which event he was required to claim the prize at the Brady within three minutes. If the winner did not claim the prize within these rules, it was added to the amount of the following week's drawing.

Our statute prescribing lotteries (article 654, P.C.) does not define the term. We are therefore relegated to its generally accepted definition.

The authorities are agreed that these three elements are essential to constitute a lottery: (1) A prize in money or other thing of value; (2) its distribution by chance; and (3) payment, either directly or indirectly, of a valuable consideration for the chance to win the prize.

Concededly the plan in issue possessed the first two of these elements; and our inquiry is limited to the sole question whether it possessed the third; namely, a valuable consideration paid, directly or indirectly, by the registrants.

Lottery cases are many; the courts having been called upon to adjudicate an all but limitless variety of schemes or plans sought to be brought within the purview of the term. These adjudications are remarkable in unanimity, not only as regards the essential elements of a lottery, but also in the application of those elements to the varied fact combinations passed upon. Quite an extended digest of the decisions may be found in the annotation in 48 A. L.R. 1116 et seq. See, also, 38 C.J. p. 291, §§ 6 and 7; 17 R.C.L. p. 1222, § 10. There are a number of decisions practically on all fours with the case at bar. Yellow-Stone Kit v. State, 88 Ala. 196, 7 So. 338, 7 L.R.A. 599, 16 Am.St.Rep. 38; Cross v. People, 18 Colo. 321, 32 P. 821, 36 Am.St.Rep. 292; State v. Hundling, 220 Iowa, 1369, 264 N.W. 608, 610; People v. Cardas, 137 Cal.App.(Supp.) 788, 28 P. (2d) 99; State v. Crescent Amusement Co. (Tenn.Sup.) 95 S.W.(2d) 310; State v. Eames, 87 N.H. 477, 183 A. 590. We would rest our decision upon a mere citation of these latter authorities but for the fact that the cases of State v. Danz, 140 Wash. 546, 250 P. 37, 38, 48 A.L.R. 1109, and Featherstone v. Independent S. S. Ass'n (by the Dallas Court) 10 S.W.(2d) 124, 125, are strenuously urged by appellee as being in conflict with these holdings.

As above stated it is essential to a lottery that something of value must be paid for the *chance* to win the prize. The element of venture, the chance to lose or win something of value, is essential.

"There is no law which prohibits the gratuitous distribution of one's property by lot or chance." Alabama case, supra; 38 C.J. p. 291.

The fact that the holder of the drawing expects thereby to receive, or in fact does receive, some benefit in the way of patronage or otherwise, as a result of the drawing, does not supply the element of consideration paid *by the chance holder* for the *chance*.

The holding in the Alabama case, supra, is thus stated in the syllabus: "Distributing prizes by lot or chance to holders of tickets given away is not carrying on a lottery, although it may be done with the view of drawing a large crowd together in the hope of profit from such of them as may choose to buy medicines from the distributor, or tickets to performances given by him, or to pay for seats in the tent where the prizes are selected, where no payment for any purpose is necessary as a condition of receiving a prize."

And further from the opinion: "If the distribution is a pure gift or bounty, and not in name or pretense merely, which is designed to evade the law,—if it be entirely unsupported by any valuable consideration moving from the taker,—there is nothing in this mode of conferring it which is violative of the policy of our statutes condemning lotteries, or gaming."

The scheme there held not to constitute a lottery was as follows: The defendant (Yellow-Stone Kit) was a medicine ven-

der. He had a large tent (seating capacity 900 to 1,000, standing room about 2,500), in which he gave acrobatic and musical performances, to which no admission was charged, the only charge being to those occupying seats. At these performances he distributed free tickets to a prize drawing to be conducted at the last performance. It was not necessary to be present at the drawing to win a prize. The court say:

"The suspicion, even though well founded, that these presents may have been given away in order to induce a larger crowd to assemble at the defendant's performances, with the expectation that they would buy medicines, or pay a fee for occupying a seat in the tent, would be ·too remote to constitute a legal consideration for the tickets."

The following is the gist of the Colorado decision: "The fact that chances in a drawing for a piano are gratuitously and indiscriminately given away to induce people to visit a certain store with the expectation that they may purchase goods and thereby increase trade is a benefit too remote to constitute a consideration for the chances and make it a lottery prohibited by law."

The Iowa case involved a "Bank Nite" plan identical with that at bar, except that the time limit there for claiming the prize was two and one-half instead of three minutes, as here. The court cite with approval the Alabama, Colorado, and California cases.

The latter was also a motion picture drawing, the only differences between the plan there and that here being that the prize was a ticket to Catalina Island and the chances were evidenced by tickets distributed free and indiscriminately outside the theater.

As pointed out in the California case, the Washington and Texas cases are clearly distinguishable from it and the case at bar, in that where as the prize tickets were distributed to customers and noncustomers; nevertheless those given the latter class were negligible.

In the Washington case a prize ticket was given away with each paid admission ticket; and a notice posted at the box office that any one might upon application receive a prize ticket free, whether or not he bought an admission ticket. It is to be noted that this was a five to four decision, the minority delivering a well-considered dissenting opinion. The decision of the majority is predicated upon the holding that the price of admission tickets actually included a payment for the chance. The opinion says: "What did the purchaser get? Not simply a ticket for the screen show, but a ticket to that, and to the chance drawing. The appellants and their patrons so understood and intended it. That was the plan and purpose for which the consideration was paid. Nor is the fact that free tickets were offered to outsiders material in any controlling sense. None such were given out as a matter of fact, and, if there had been, it would not of itself have made any difference. If in the flourishing days of the Louisiana lottery its management had advertised that it would give a free ticket to the president of every bank in the city of New Orleans, that would not have changed the scheme from a lottery, whether or not any one or all of such free tickets were accepted."

Manifestly this reasoning is sound, whether or not one agrees with the holding that purchasers of admission tickets under the circumstances actually paid for the chances distributed to them. The only difference between the majority and minority was upon this point.

The plan in the Texas case was substantially this: Dealers in automobiles, accessories, gas, and oil distributed to each customer a ticket for each dollar of purchase, which entitled him to a chance in a drawing for an automobile. A competitor obtained a temporary injunction, and thereafter defendants "changed the mode of operations 'to this extent, they not only gave out tickets to customers who bought merchandise, but *in some instances* to individuals who were not purchasers." (Italics supplied.) These facts present even a stronger case of subterfuge than do those of the Washington case, in these respects: (1) It is clear that the change in plan was made in view of the injunction; and (2) the distribution of free tickets to noncustomers was not general but only to those to whom the defendants might choose to give them.

The opinion states that the defendants "do not seriously contend that the scheme above outlined was not a lottery." This is further evidenced by the fact that no application for review was made to the Supreme Court. The main contention which they made was that the trial court

correctly denied a permanent injunction upon the express holding that plaintiff was not entitled to equitable relief because no "property rights" as construed by that court were affected, which holding the Court of Civil Appeals overruled.

A very recent "Bank Nite" case, by the Massachusetts Supreme Judicial Court, falls in the same class as the last two cases above. Commonwealth v. Wall, 3 N.E. (2d) 28, 30. The court state that their "conclusions of law as to 'Bank Night' are not in conflict with those reached by the Supreme Court of New Hampshire in State v. Eames."

The only decision we have found which seems to be at variance in principle with the holdings in the Alabama and other like cases is the Virginia case of Maughs v. Porter, 157 Va. 415, 161 S.E. 242. The following analysis and criticism of that decision is from the Iowa case, supra: "In that case a person holding a public auction sale of city lots advertised that an automobile would be given away to some person among those attending the sale to be determined by chance. The plaintiff in that action attended the sale and won the automobile. It was not delivered, however, and the action was brought to compel its delivery The court held that the attendance at the auction was a sufficient consideration to support the contract but that the contract was unenforceable because the scheme was a lottery. The case is not readily distinguishable on principle from the case at bar. It is unique, however, not only in the manner in which it arose and the issues tendered, but in the fact that it appears to be the only case dealing with the subject of lottery which holds that attendance at a place by the holder of a chance is sufficient consideration to make the scheme a lottery. It has been severely criticised. University of Pa. Law Rev., vol. 80, p. 744; Virginia Law Rev., vol. 18, p. 465. It denominates as a 'lottery' a scheme which lacks the one element which is the source of all the evil connected with a lottery. It is without support among text-writers or court decisions. It cites no authority which sustains it. On the contrary, as pointed out by the Virginia Law Review, supra, 'the authorities cited in its decision seem to contradict rather than support it.' Under such circumstances, it hardly affords a safe guide to follow, especially in the interpretation of a statute creating a crime where the rule of strict construction must be applied."

The facts at bar clearly bring the instant plan within the general rules above announced, and specifically within the holdings of the Alabama, Colorado, Iowa, California, Tennessee, and New Hampshire cases, as lacking the essential to a lottery of a consideration paid, directly or indirectly, for the chance to win the prize.

The temporary injunction is dissolved and the cause remanded.