AFFILIATED ENTERPRISES, Inc., v.
GRUBER et al.

No. 3153.

Circuit Court of Appeals, First Circuit.

Dec. 18, 1936.

George S. Ryan, of Boston, Mass. (Emmett Thurmon, of Denver, Colo., on the brief), for appellant.

Matthew Brown, of Boston, Mass. (James S. Stewart, of Boston, Mass., on the brief), for appellees.

Before BINGHAM, WILSON, and MORTON, Circuit Judges.

BINGHAM, Circuit Judge.

This is an appeal from a decree of the District Court for Massachusetts dismissing the plaintiff's bill of complaint on the ground that plaintiff's plan or system for which it sought protection by injunction was a gambling transaction.

The bill set out that for advertising purposes plaintiff had devised and used a plan or system contemplating "the gratuitous award of a specified sum of money at stated periods to the persons who may then be designated in accordance with the terms and stipulations of the plan." Under this plan any person above 17 years of age had the right to register and have his name, or a serial number identifying him, placed in a receptacle from which at a specified time or place (usually in a moving picture theater) it might be drawn, and he would then be entitled to the award which had previously been determined and made known to the public. The registration was free and open to the public generally, the purchase of a ticket of admission to the theater not being "a condition to registration or to participation in the plan." "The name of the person whose number is drawn is announced as the donee of the award, both from the stage and outside the theatre and at any other place that may have been designated. If such person is outside the theatre at the time he will be admitted free for the purpose of claiming the award." He must, however, appear within a reasonable time or he will lose his right to the award, and the amount will be carried over and added to that of the next drawing. It thus appears from the bill that no consideration is demanded for the right to participate in the drawing.

"The three essential elements of a lottery [or other gambling device] are: First, consideration; second, prize; and third, chance," and "the gratuitous distribution of property by lot or chance, if not resorted to as a device to evade the law, and if no consideration is derived directly or indirectly from the party receiving the chance, does not constitute a lottery." 17 R.C.L. 1222. This is supported by the great weight of authority. Post Publishing Co. v. Murray (C.C.A.) 230 F. 773; People v. Farmer Miller et al., 271 N.Y. 44, 2 N.E.(2d) 38; Yellow-Stone Kit v. State of Alabama, 88 Ala. 196, 7 So. 383, 7 L.R.A. 599, 16 Am. St.Rep. 38.

This particular plan has been before the courts, and, on such facts as are here alleged, has been declared legal. State v. Eames, 87 N.H. 477, 183 A. 590; Commonwealth v. Wall (Mass.) 3 N.E.(2d) 28; State v. Hundling, 220 Iowa, 1369, 264 N.W. 608, 103 A.L.R. 861; State ex rel. Dist. Attorney Gen. v. Crescent Amusement Co. (Tenn.Sup.) 95 S.W.(2d) 310. True evidence might develop a situation where it could be found that the registration privilege was not free and open to the public, and in the practical operation of the device there would necessarily be some consideration for the privilege of taking a chance. State v. Eames, supra; Commonwealth v. Wall, supra; State v. Hundling, supra. But here the allegations of the bill must be taken as true.

We think the dismissal of the bill of complaint on the ground stated was erroneous.

As stated in plaintiff's brief, "the bill asks for relief on two principal grounds: Infringement of copyright and unfair competition." It sets out that the plaintiff is now, and has been for some time, "engaged in the business of vending or licensing throughout the United States a plan or system originated, prepared, arranged

and compiled by it, for the purpose of advertising the business of, and of encouraging, stimulating and promoting patronage in commercial establishments, particularly in motion picture theatres"; that the plan is generally known as "Bank Night," but may be designated by other similar names; that in connection with the plan plaintiff is engaged in manufacturing or otherwise acquiring, and in supplying to its licensees, "the necessary registration books and cards, 'trailers' or screen advertising, and in furnishing them printed instructions and other information and suggestions for the successful operation of the plan."

The bill further alleges that the plaintiff is the sole and exclusive owner of the plan or system, "of the good-will appurtenant thereto, of a form of license agreement, and of the right to print, publish and use said plan or system, the said trade names, instructions for operation of plan, special notice to licensees, and the advertising trailers, circulars, registration book and cards, drawing cards and devices, and other matter printed or published for the effective operation of said plan or system and in these it has acquired a property right, and the sole right, title and ownership"; that "the plaintiff is the sole and original author of writings describing the said plan or system and providing for its successful operation, including a form of license agreement, an explanation of the system, a special notice, and instructions to licensees, the contents of which may be profitably used, in whole or in part, on 'heralds' or 'trailers' of motion picture theatres," and has copyrighted such publications and instructions; that it had secured a property right and interest and the sole right to use the name "Bank Night" and similar names to designate similar plans or systems. The bill states that a patent had been applied for to secure the sole rights of the plaintiff in the plan or system, but that no patent had been granted when the bill was filed.

The defendants are charged with appropriating to themselves the benefits to be derived from the advertising done by the plaintiff and its licensees, and with appropriating the income and profits of plaintiff's business, by engaging in the business of selling, or attempting to sell, licenses to use a scheme or plan known as "Parlay Cash Night," which is substantially the same as that of plaintiff; that they have delivered, or offered to deliver, to exhibitors, advertising matter and notices and instructions in connection with the "Parlay Cash Night" plan substantially the same as those used by plaintiff; that the language used in defendants' publications is "substantially identical in all material respects with the language in the plaintiff's copyrighted publications, and compliance with the instructions will result in the operation of a plan or system substantially the same as the plaintiff's."

The prayers of the bill are that plaintiff's right, title, and interest in and to the plan or system known as "Bank Night" be adjudged and established; that defendants be adjudged to have infringed upon such right, title, and interest and particularly upon said copyrights, and to have been guilty of unfair competition with the plaintiff; for an accounting; and for an injunction against the defendants.

The defendants moved to dismiss the bill on ten grounds. It is not necessary to specify them. The principal ones in substance allege that the bill of complaint does not state a cause entitling plaintiff to the relief prayed for, in that it does not show infringement of copyrights, infringement of any trade-mark, or invasion of plaintiff's right through unfair competition.

As stated, the bill asks for relief on two principal grounds—infringement of copyright and unfair competition. It will be sufficient to consider whether the bill, fairly interpreted, can be said to show either.

There is no claim that the defendants represent their exhibitions or drawings to be those of the plaintiff or to be authorized by the plaintiff, or that they are in any way subject to being confused with the plaintiff's exhibitions or drawings.

"Bank Night" indicates to a certain extent the character of the plaintiff's business, while "Parlay Cash Night" is used to indicate to a like extent the character of the defendant's business. Since the businesses are substantially the same, the descriptive trade-names necessarily carry the same idea. One cannot adopt a descriptive name as a trade-mark and thus bar others from using all names tending to describe the same article or business. See 63 C.J. 346, § 43 et seq. At any rate, we think that the name "Parlay Cash Night" to designate the defendants' business through exhibitions or drawings will have no tendency to confuse the public or plain-

tiff's possible customers or licensees and cause them to believe that defendants' business through such exhibitions or drawings is promoted by the plaintiff; and that plaintiff's trade-mark, if it has one, is not shown by the allegations to have been infringed.

There is no allegation in the bill that plaintiff's copyrights have been infringed—that the language of plaintiff's publications have been copied, either directly or indirectly. "The [copyright] statute is infringed only by 'copying' that which is 'copyrighted.'" Davies v. Bowes (D.C.) 209 F. 53, 55. "One work does not violate the copyright in another simply because there is a similarity between the two, if the similarity results from the fact that both works deal with the same subject or have the same common sources." 13 C.J. 1114, § 278. See Harold Lloyd Corp. v. Witwer (C.C.A.) 65 F.(2d) 1, 4; Perris v. Hexamer, 99 U.S. 674, 25 L. Ed. 308. The statement in the bill that the language in defendants' publications "is substantially identical in all material respects with the language in plaintiff's copyrighted publications" is simply a rehearsal of evidence that might be used in showing infringement, but it is not an allegation of infringement, and the bill cannot be sustained for infringement of the alleged copyright.

The bill alleges unfair competition in that defendants have taken plaintiff's property and used it for their own profit. But an analysis of the bill as a whole shows no taking or interfering with anything belonging to the plaintiff. The most that can be said is that there has been a following of plaintiff's plan or system. The burden of the contention running through the bill seems to be that, because plaintiff has expended a large amount of money, time, and effort in promoting, developing, and putting on the market its system, or because it owned copyrights of its instructions, etc., which, if followed, would result in the practice of the system, it has acquired a property right in the system, not simply in the business, and equity should enjoin the defendants from appropriating it to their own use and profit. But this position is altogether too broad. If sustained, it would result in a monopoly to the plaintiff, preventing any other person from entering the field and, through his own efforts and the expenditure of time and money in advertising, etc., building up a busi-

ness of supplying to moving picture houses, and others, advertising trailers, registration book cards, and other matter used in connection with a system so as to bring about a drawing and award.

As said in Chadwick v. Covell, 151 Mass. 190, 191, 23 N.E. 1068, 6 L.R.A. 839, 21 Am.St.Rep. 442, and paraphrasing:

"So far as the right to manufacture and sell the medicines [to exhibit in accordance with the system] goes, the plaintiff's case may be disposed of in a few words. Dr. Spencer [plaintiff] had no exclusive right to the use of his formulas [its system]. His [its] only right was to prevent any one from obtaining or using them [the system] through a breach of trust or contract. Any one who came honestly to the knowledge of them [the system] could use them [it] without Dr. Spencer's [plaintiff's] permission, and against his [its] will."

See, also, Kaeser & Blair, Inc., v. Merchants' Ass'n, Inc. (C.C.A.) 64 F.(2d) 575.

However good and valuable an idea, plan, scheme, or system is, the moment it is disclosed to the public without the protection of a patent, it becomes public property, and the fact that it has been made popular by advertising and the expenditure of effort, time, and money on the part of the originator does not alter the situation.

As the system has not been copyrighted and, being in no sense a writing, could not be (Constitution, art. 1, § 8, cl. 8; 17 U.S.C. § 4 [17 U.S.C.A. § 4]) and has not been patented, if it could be, we are constrained to hold that, although plaintiff has expended time and money in originating and developing a system, it has no property right therein which has been appropriated by the defendants. While the plaintiff restricts operating under the system to its licensees, by its very nature, in order for it to operate, knowledge thereof must be thrown open to the public and any property right based upon secrecy was lost as early, at least, as the first public exhibition, and there was no surreptitious appropriation of knowledge of the system by the defendants. In this respect it differs from the case of Board of Trade v. Christie Grain & Stock Co., 198 U.S. 236, 25 S.Ct. 637, 49 L.Ed. 1031, and other like cases. The situation is analogous to that where an inventor of an unpatented machine licenses others to use

it in a way disclosing the device to the public, in which case there is nothing to prevent the public from building and using it.

In working under its system the plaintiff stands on the same footing as others. It can come into equity for an injunction against unfair competition, prohibiting another from representing the exhibitions promoted by him are exhibitions promoted by it and preventing the unwarranted use of its property to aid him in competing with it. It is not alleged that the defendants have done any of these things. They have worked under the system, which we hold they had a right to do, and this has resulted in exhibitions similar to those promoted by plaintiff. If they were advantaged by advertisements, etc., to enhance the value and popularity of the plaintiff's exhibitions, it was only such advantage as necessarily results from any competitor advertising similar wares.

In International News Service v. Associated Press, 248 U.S. 215, 39 S.Ct. 68, 63 L.Ed. 211, 2 A.L.R. 293, one of the cases relied upon by the plaintiff, no complaint was made that the defendant adopted a similar system of collecting and distributing news. That was admittedly a legitimate thing to do, and that is all the defendants here have done. What was complained of and what the court condemned was the taking by defendant of news gathered by and at the expense of the plaintiff and transmitting it, while still valuable as news, for commercial use in competition with the plaintiff and thus wrongfully interfering with plaintiff's business by taking its profits.

On page 239 of 248 U.S., 39 S.Ct. 68, 72, 63 L.Ed. 211, 2 A.L.R. 293, the court said:

"In doing this defendant, by its very act, admits that it is taking material that has been acquired by complainant as the result of organization and the expenditure of labor, skill, and money, and which is salable by complainant for money, and that defendant in appropriating it and selling it as its own is endeavoring to reap where it has not sown," and thus appropriating to itself the harvest of those who have sown.

No such element of unfair competition is present in this case. There is no allegation that defendants have taken any property, property right or quasi property right, of the plaintiff except the system and its property right in that was lost when disclosed to the public. The International News Service Case has no bearing here.

Meccano Ltd., v. Wagner (D.C.) 234 F. 912, and Meyer v. Hurwitz (D.C.) 5 F. (2d) 370, relied on by the plaintiff, present matters of unfair competition similar to the situation disclosed in the International News Service Case. In the Meccano Case what the defendant did was to make and sell to plaintiff's customers who had purchased from the plaintiff a complete set of its parts, additional parts which could be used with the plaintiff's complete sets, and in connection with which plaintiff also made and sold additional parts, by going to plaintiff's customers and selling, or offering to sell, its additional parts and at a much less price. In the Meyer Case the manufacturer of picture post cards built up a business of selling them through a coin operated vending machine and the defendant appropriated to himself such business by manufacturing and selling similar cards to dealers at a lower price, to be sold by them through plaintiff's machines. What was done in both cases was found to be unfair competition. But the condition of unfair trade there found to exist is wanting here.

The plaintiff further complains that the defendants have represented that the plaintiff's system was not protected and defendants' right to the "Parlay Cash Night" system was equal to the plaintiff's "Bank Night" system, and in this there was unfair competition. If the defendants had the right to operate the system, as we hold they did, of course there was nothing unfair in so representing to their customers.

Although we do not agree with the District Court that the bill should be dismissed on the ground there given, we do hold, for the reasons above stated, that the order of the District Court dismissing the bill must be affirmed.

The order or decree of the District Court is affirmed, with costs to the appellees.