Cheshire
No. 89-035

THE STATE OF NEW HAMPSHIRE

v.

PAUL POWELL

December 28, 1989

*John P. Arnold,* attorney general (*Michael D. Ramsdell,* assistant attorney general, on the brief, and *Mr. Ramsdell* orally), for the State.

*James E. Duggan,* chief appellate defender, of Concord, by brief and orally, for the defendant.

JOHNSON, J. The defendant was convicted after a jury trial in Superior Court (*Contas,* J.) of violating RSA 647:1, I, by selling a Massachusetts Megabucks ticket to another person. Defendant appeals the conviction, arguing that, properly interpreted, this statute does not apply to his conduct. We agree and therefore reverse.

The material facts of this case are not in dispute. Defendant is a 63-year-old retired man living in Keene. Until the time of his arrest, defendant travelled to Massachusetts twice a week to buy Megabucks tickets and other Massachusetts lottery tickets for certain New Hampshire residents who did not want to make the trip themselves. Most of these residents gave defendant an extra twenty-five cents above the one dollar ticket price to compensate him for his services. The quarter "tip" was neither required nor demanded. Moreover, the ticket buyers picked their own lottery numbers and defendant kept no portion of their winnings. At the time of his arrest, defendant was buying approximately 400–500 tickets per week for New Hampshire residents.

The State originally charged the defendant under RSA 284:21-o, which reads:

> "No person shall engage in the business of purchasing or offering to purchase a sweepstakes or lottery ticket or tickets for, in behalf of, or in the name of another for a fee or service charge which shall make the ultimate cost of such ticket or tickets for the registered owner thereof greater than the legal price of such ticket or tickets as established by the sweepstakes commission under the authority of this subdivision. Whoever violates the provi-

sions of this section shall be guilty of a misdemeanor if a natural person, or guilty of a felony if any other person."

The State dropped the charge that defendant violated RSA 284:21-o, which is one of the statutory sections relating to the New Hampshire sweepstakes. Instead, the State prosecuted defendant under RSA 647:1, I, which reads:

"*Lotteries.* A person is guilty of a misdemeanor if he knowingly and unlawfully:

I. Conducts a lottery or disposes or offers to dispose of property in any way whereby the payment for such property is, in whole or in part, induced by the hope of gain by luck or chance...."

Under the State's theory of the case, defendant would be guilty of violating RSA 647:1, I, even if no one gave defendant the twenty-five-cent "tip." Simply buying a lottery ticket for another would be a crime, according to the State's theory. The fact of the service charge is therefore irrelevant to this case.

During oral argument the State acknowledged that RSA 284:21-p would prohibit a prosecution wherein one person buys a New Hampshire sweepstakes ticket for another, since this section specifically provides that "RSA 647 shall not apply to the sale of lottery and sweepstakes tickets provided for by this subdivision [relating to the New Hampshire sweepstakes]."

The main issue here concerns the meaning of "property" in RSA 647:1, I. Defendant's argument implies that "property" refers to the prize money offered by the Massachusetts lottery. The State, on the other hand, maintains that "property" refers to lottery tickets. We hold that the word "property" in RSA 647:1, I, refers to the lottery prize money. "Because the [trial] court erred as a matter of law, the decision below must be reversed." *Buxton v. Glennon*, 122 N.H. 674, 678, 448 A.2d 420, 422 (1982) (citation omitted).

■ The State is correct in pointing out that:

"'In any case involving the interpretation of a statute, the starting point must be the language of the statute itself.' *State Employees' Ass'n of N.H. v. Bd. of Trustees*, 120 N.H. 272, 273, 415 A.2d 665, 666 (1980)...."

*Dover Professional Fire Officers Assoc. v. City of Dover*, 124 N.H. 165, 169, 470 A.2d 866, 868–69 (1983).

New Hampshire's prohibition of private, for-profit lotteries dates back to 1754. Laws of N.H., Vol. 3, at 85. *See also* RSA 287-A:2 (non-profit organizations may conduct lotteries). The forty-fifth

General Assembly, of 1754, declared that lotteries "may be attended with many evil and Pernicious Consequences not only to Individuals but also to the publick ...." Laws of N.H., Vol. 3, at 85. The Assembly therefore enacted the following law:

> "If any Person or Persons shall undertake to set up any lottery, or Expose to sale, or Dispose of any Estate Real or Personal, by Way of Lottery, such Person or Persons shall for such offence forfeit and pay the sum of Five hundred Pounds ...."

*Id.*

In the two hundred and thirty-five years since the first New Hampshire anti-lottery law was passed, the wording of the statute has changed. However, there is no evidence in the legislative history that the *meaning* has changed. The wording of the 1754 law was not materially altered until 1842. *See* Laws of N.H., Vol. 7, at 568 (1807 version, almost identical to the 1754 version). The 1842 statute was a simplification of the earlier law:

> "If any person shall make or put up any lottery, or shall dispose of any estate, real or personal, by lottery, he shall be fined not exceeding five hundred dollars, nor less than fifty dollars."

RS 220:1. *See also* CS 234:1 (1853 version, identical to 1842 version). The next change in the law was enacted in 1867. GS 254:1 was wordier than its predecessors:

> "If any person shall make or put up any lottery, or pretended lottery, or shall dispose of or offer, or pretend to dispose of, any money, or property real or personal, by lottery, or in any way such that any hope or expectation of gain by luck or chance is made an inducement to pay for such property, or for any share or chance thereto, he shall be fined from fifty to five hundred dollars."

The addition of the words "or in any way such that any hope or expectation of gain by luck or chance is made an inducement to pay for such property, or for any share or chance thereto" appears to have been an attempt on the part of the legislature to clarify the meaning of "lottery." *See State v. Eames*, 87 N.H. 477, 479, 183 A. 590, 591 (1936) ("The latter half of this section of PL 384:1, beginning 'or in any such way ...' etc., is clearly a partial definition of the word 'lottery' which appears just before it.").

The 1867 version was not materially changed until 1971. *See* GS 272:1 (1878); PS 270:1 (1901 version); PL 384:1 (1926 version); RL 447:1 (1942 version); and RSA 577:1 (1955 version). In 1971, the current version was adopted, apparently without recorded legislative comment, as part of a comprehensive criminal code. RSA 647:1, I.

The only interpretive guide to RSA 647:1, I, the current anti-lottery law, is found in the 1969 "Report of Commission to Recommend Codification of Criminal Laws." The comments to the proposed statute read: "This section is based on current statutes, namely RSA 577:1, 2, and 3. The terminology found in these statutes has largely been retained in view of interpretive decisions based thereon. *See, e.g., State v. Eames,* 87 N.H. 477, 183 A. 590 (1936)...."

From the foregoing comments, and from the lack of legislative discussion upon the adoption of RSA 647:1, I, we deduce that the legislature did not intend to change the meaning of the anti-lottery law, but sought instead merely to clarify and simplify the law. Moreover, we can look to decisions such as *State v. Eames supra,* which interpret the predecessors of RSA 647:1, in order to understand the current law.

 Returning to the question before us, *Eames* helps uncover the meaning of "property" in RSA 647:1, I. The pertinent part of the opinion reads:

> "This statute [PL 384:1] reads as follows: 'No person shall make or put up a lottery, or pretended lottery, or shall dispose of, or offer or pretend to dispose of, any money or property, real or personal, by lottery, or in any such way that a hope or expectation of gain by luck or chance is made an inducement to pay for such property, or for any share or chance therein.' The latter half of this section, beginning 'or in any such way ...' etc., is clearly a partial definition of the word 'lottery' which appears just before it."

*Eames,* 87 N.H. at 479, 183 A. at 591. In common parlance, "lottery" means "a drawing of lots in which prizes are distributed to the winners among persons buying a chance." WEBSTER'S NINTH NEW COLLEGIATE DICTIONARY 706 (1984). *Eames* explains that "three elements must be present in order to constitute a lottery within the meaning of that word as used in criminal statutes. These three elements are, (1) a prize, (2) chance, (3) consideration." *Eames,* 87 N.H. at 478, 183 A. at 591. In *Eames,* the "prize" was a sum of money. It

was disposed of by chance, through a random drawing. This case and our reading of the history of RSA 647:1, I, support defendant's contention that "property" in RSA 647:1, I, refers to the prize money offered in a lottery, and not to the lottery tickets themselves.

There are two other decisions interpreting the anti-lottery law. *Skiff v. Johnson*, 57 N.H. 475 (1876) (interpreting GS 254:1); *State v. Clarke*, 33 N.H. 329 (1855) (interpreting CS 561:1, 2). Both are in accord with defendant's position. *Skiff v. Johnson supra* involved

> "prize-package candy. Each package had a label setting forth that, in addition to candy, such package contained something else of value; but each package did not contain the same kind of articles, or articles of the same value.
>
> The ordinary purchaser would understand that there were chances for him to get more than the worth of his money, and chances to get less."

*Skiff v. Johnson*, 57 N.H. at 475. The "property" being disposed of by chance in this case was obviously the prizes found inside the candy packages, and not the candy itself. *State v. Clarke supra* is similar. In that case, defendant conducted a "gift book sale." Books were sold for more than their worth and on the back of each book was a lottery number. If a customer bought a book with a certain number (the particular number being unknown to the customer) the customer would win a gold ring. Again, the "property" disposed of by chance was obviously the prize—the gold ring—and not the books.

■ Finally, we look at RSA 647:1 as a whole to determine the meaning of "property" in paragraph I of the statute. "The intent of an ordinance or statute is determined from its construction as a whole and not by separately construing isolated words or phrases." *Piecuch v. Manchester*, 114 N.H. 8, 11, 314 A.2d 642, 643–44 (1984). Paragraph II of RSA 647:1 reads:

> "A person is guilty of a misdemeanor if he knowingly and unlawfully:
>
> II. Sells, offers for sale, or possesses for the purpose of sale, any *lottery ticket* or other thing which is evidence that the purchaser will be entitled to a share or chance in a lottery or deposits for mailing any such ticket or thing, or notice of the drawing of a lottery ...."

*Id.* (Emphasis added.)

If, as the State maintains, "property" in RSA 647:1, I, refers to a lottery ticket, paragraph II of the statute would be redundant. Under the customary rule of statutory construction, we presume that "the legislature does not enact unnecessary and duplicative provisions." *DeWees v. N.H. Bd. of Pharmacy,* 130 N.H. 396, 403, 539 A.2d 721, 726 (1988). Therefore, "property" in RSA 647:1, I, must refer to something other than a lottery ticket. After reviewing the cases above and the legislative history of RSA 647:1, I, we hold that the word "property" in RSA 647:1, I, refers to a lottery prize. The overall purpose of the statute is to prohibit private, for-profit lotteries; thus, the "gain" one hopes for is the jackpot or prize. Defendant's conviction is vacated and the complaint dismissed.

*Reversed*

All concurred.