[No. 19756.  *En Banc.*  October 21, 1926.]

THE STATE OF WASHINGTON, *Respondent,* v.
SIMON DANZ *et al., Appellants.*[1]

[1] LOTTERIES (1)—VIOLATION OF STATUTORY PROVISIONS—EVIDENCE—
SUFFICIENCY.  The evidence sustains a conviction of operating a
lottery, in violation of Rem. Comp. Stat., § 2464, defining a lot-
tery as a scheme for the distribution of money or property by
chance among persons paying a consideration therefor, where it
appears that the owner of a moving picture theater, one night in
each week, gave out to patrons attending the performance lottery
tickets entitling them to participate in the distribution of gro-
ceries  and other personal property of value, as decided by lot
and chance (PARKER, J., dissenting).

Appeal from a judgment of the superior court for
King county, Brown, J., entered December 15, 1925,
upon a trial and conviction of operating a lottery.
Affirmed.

*A. J. Laughon,* for appellants.

*Ewing D. Colvin* and *Allen Peyser,* for respondent.

MITCHELL, J.—Simon Danz and S. D. Maine were
jointly charged with the crime of operating a lottery.
They were tried together, convicted, fined, but no costs
imposed, and have appealed.

Appellant Danz operated a moving picture show in
Seattle known as the Hollywood Theatre, situated in
a residential district.  Appellant Maine was associated
with him in the distribution of groceries or other per-
sonal property of value from the stage of the theatre
once each week.  The property distributed cost the
theatre nothing but was collected by Maine from vari-
ous stores whose compensation was derived from hav-
ing their names mentioned as the goods were dis-
tributed.  The distribution was by lot and chance.  The

[1]Reported in 250 Pac. 37.

enterprise was locally and commonly known as the "country store" and put on Thursday night of each week, such night being a time when the theatre did not put on one of its biggest pictures. On the night of each drawing, each adult theatre patron, upon paying the admission price, received a lottery ticket. The evidence shows that, by a card conspicuously placed at the entrance to the theatre, the appellants offered free tickets to the drawing without the necessity of purchasing an admission ticket to the theatre, in which respect, however, the evidence also shows without dispute that no one ever asked for or received the one without buying the other. Nor was there any dispute or denial of the fact that the so-called "country store" was put on as "an additional drawing card" for such occasions.

The prosecution in this case is based on Rem. Comp. Stat., § 2464 [P. C. § 8965], which declares a lottery to be unlawful and a public nuisance, and defines it as,

". . . a scheme for the distribution of money or property by chance, among persons who have paid or agreed to pay a valuable consideration for the chance, whether it shall be called a lottery, raffle, gift enterprise, or by any other name."

The same section of the statute further provides:

"Every person who shall contrive, propose or draw a lottery, or shall assist in contriving, proposing or drawing a lottery, shall be punished, etc."

The elements of a lottery, as defined by statute, are (1) the distribution of money or property, (2) chance, and (3) a valuable consideration paid or agreed to be paid for the chance. The name by which the enterprise is called is immaterial. The language is broad in this respect.

[1] The evidence in this case showed that on each of the occasions the "country store" was ·held the

appellants distributed goods and merchandise by chance to a number of persons in the theatre who had purchased admission tickets, for the usual and customary price, and with those tickets other tickets to the drawing. The evidence also showed that the goods distributed had substantial value. It was so testified to by merchants who furnished the goods.

Thus the state established the first and second elements of the crime charged. We do not understand that the appellants contend to the contrary. But the chief argument on behalf of the appellants on this branch of the appeal is that the element of consideration for a chance in the drawing was lacking. But this, under the facts in this case, cannot be determined as a matter of law in favor of the appellants. Manifestly, it was the plan and purpose of the appellants to get additional money by putting on the chance drawing. The testimony shows it was put on as an additional drawing card. The patrons knew it was ''country store'' night. They paid a valuable consideration to participate. The fact that they paid the same price charged on other nights, when the theatre was running a more popular play without an added attraction, is not conclusive or controlling in favor of the appellants. A valuable consideration was paid. What did the purchaser get? Not simply a ticket for the screen show, but a ticket to that and to the chance drawing. The appellants and their patrons so understood and intended it. That was the plan and purpose for which the consideration was paid. Nor is the fact that free tickets were offered to outsiders material in any controlling sense. None such was given out as a matter of fact and, if there had been, it would not of itself have made any difference. If in the flourishing days of the Louisiana lottery its management had

advertised that it would give a free ticket to the president of every bank in the city of New Orleans, that would not have changed the scheme from a lottery, whether or not any one or all of such free tickets were accepted.

Counsel for appellants has considerately called our attention to the lottery statutes of a great many states, admitting they differ more or less according to the three classes into which he puts them, and to cases from the courts of many of those jurisdictions. We need not attempt the arduous task of reviewing, applying or distinguishing those statutes and cases, because, in all fair consideration, the question is settled in this state by the case of *Society Theatre v. Seattle,* 118 Wash. 258, 203 Pac. 21. That was a case in which the Society Theatre and an association of merchants, manufacturers and growers sued to enjoin officers of the city of Seattle and of the county of King from enforcing a city ordinance and the state statute relating to lotteries. The plan of those who furnished the goods, claimed by them to have been an advertising one, was to distribute tickets to patrons of moving picture houses after patrons had been admitted to the theatres in the usual manner. Then,

"Following the regular performance, the association conducts a drawing by lot, and those holding the fortunate tickets receive a prize consisting of a sack of flour, or a can of a certain brand of fish, or other like article. The theatres have nothing to do with the giving out of the tickets, the drawing, or the distribution of the prizes, and they do not make any extra charge for admission to the theatre. It will thus be observed that the theatres have no direct connection with the distribution of the tickets or the prizes, and that the persons receiving them do not pay any direct consideration for them."

Upon a preliminary hearing in that case, an injunction was granted against the enforcement of the laws. The city appealed. This court reversed the order and remanded the case for further proceedings. Now, counsel for appellants argues that that case is not in point and that certain language used in it is *dictum*, for the reason that the appeal involved only the city ordinance which is broader than the statute, while the language complained of contained in the decision was under and with reference to the state statute alone. It is true that we stated in that case that the definition of a lottery as found in the ordinance was probably somewhat wider than that usually given by the dictionaries, and held that it was unnecessary for us to determine whether the acts of the plaintiffs in that case were in violation of the state law; nevertheless, the value of that case, or the language in it now complained of, as applied to the present one is found in the discussion of the weight or value of the facts therein as related to the crime of lottery. Especially so, because that analysis is made in immediate connection with an enumeration of the elements of a lottery—precisely identical with the elements of a lottery as defined by our statute. In this respect we said:

"The elements of a lottery are: First, a consideration, second, a prize, and third a chance. It needs no argument to show that the second and third elements appear in the business conducted by respondents. But it is argued that the element of consideration does not appear because the patrons of the theatres pay no additional consideration for entrance thereto, and pay nothing whatever for the tickets which may entitle them to prizes. But while the patrons may not pay, and the respondents may not receive, any direct consideration, there is an indirect consideration paid and received. The fact that prizes of more or less value are to be distributed will attract persons to the theatres

who would not otherwise attend. In this manner those obtaining prizes pay considerations for them, and the theatres reap a direct financial benefit.''

The evidence was sufficient to take the case to the jury.

After the verdict was returned, the appellants moved in arrest of judgment for the reason that the information did not state facts sufficient to constitute a crime. Without setting out the information, we are satisfied the motion was properly denied. Indeed, as we understand the record, the evidence went in without objection on this score, under what was in effect an amicable understanding to test the application of the law to this particular enterprise. Appellants seemed to know what the evidence would be, admitted there was no dispute of it, and introduced no evidence of their own.

Other assignments involve the correctness of two instructions given to the jury. We think, however, that what has already been said herein is sufficient answer to those assignments.

Judgment affirmed.

MAIN, HOLCOMB, FULLERTON, and BRIDGES, JJ., concur.

PARKER, J. (dissenting)—I can not concur in the argument or conclusion of the foregoing majority opinion. While I do not disagree with the statement of the facts made by Judge Mitchell, I feel that they should be stated somewhat more elaborately.

Appellant Danz was the owner of a moving picture theatre in Seattle. Appellant Maine was associated with Danz to the extent of being connected with the distribution of goods by chance from the stage of the theatre one evening each week as a part of the entertainment of that evening. The goods so distributed were collected by Maine from various stores or concerns of the city, the owners of which donated the

goods, and whose compensation for the donations was the advertising derived from such distribution of the goods and having their names favorably mentioned by Maine as the donators, as the goods were distributed by him from the stage of the theatre. Each person who received goods by the distribution did so by lot and chance, obtaining the chance by receiving a numbered ticket, their chance right to receive goods being determined by the drawing of a duplicate numbered ticket by a boy upon the stage from a receptacle containing such duplicate numbered tickets. Each theatre patron, upon paying the regular admission price to the theatre, was given one of the numbered chance tickets. Appellants also offered free numbered chance tickets to anyone who would ask for them, though such person should not purchase an admission ticket to the theatre. This offer was evidenced by a placard put up in a conspicuous place at the front of the theatre. The placard was approximately nine by eleven inches in size, having upon its face in plain, large letters these words:

"Tickets for drawing free. Not necessary to purchase admission tickets to theatre."

Persons receiving numbered chance tickets, without the purchase of admission tickets to the theatre, would have exactly the same right to receive goods upon the drawing and distribution as those who purchased admission tickets to the theatre and were in the theatre audience at the time of the drawing and distribution. Upon the drawings being made on the stage of the theatre, each number as drawn would be announced therefrom and anyone in the audience responding and producing the duplicate numbered ticket would have some goods given to him by Maine, who would announce the name of the store or concern donating the

particular goods then given to the holder of that ticket. If no response came from anyone in the audience producing the duplicate ticket, announcement would be made outside in front of the theatre of the lucky number drawn, and anyone holding the duplicate ticket, though outside the theatre, would have the right to enter the theatre and receive goods the same as if he had been sitting in the audience inside the theatre. Thus, the holder of any chance numbered ticket who had purchased a regular admission ticket to the entertainment did not, as holder of such chance numbered ticket, have any superior right or chance over an outsider receiving a chance numbered ticket free of cost to him. The evidence does indicate that no outsider asked for or received any chance ticket, but that all outsiders were publicly and conspicuously offered such tickets is clear.

Our statute, being Rem. Comp. Stat., § 2464 [P. C. § 8965], which, it is insisted by the prosecution, appellants violated, reads as follows:

"A lottery is a scheme for the distribution of money or property by chance, among persons who have paid or agreed to pay a valuable consideration for the chance, whether it shall be called a lottery, raffle, gift enterprise, or by any other name, and is hereby declared unlawful and a public nuisance.

"Every person who shall contrive, propose or draw a lottery, or shall assist in contriving, proposing or drawing a lottery, shall be punished by imprisonment in the state penitentiary for not more than five years, or by a fine of not more than one thousand dollars, or by both."

Nothing could seem plainer than that, to render a person guilty of this statutory crime, he must have caused the person acquiring the chance to have paid, or agreed to pay, a valuable consideration for the chance. This is not only made plain by the express

definition of the word "lottery" embodied in this statute, but also seems to be the well-settled law in the United States generally, where the meaning of the word "lottery," as used in the various state statutes, is left to be determined in the light of its usual popular meaning. In the leading case of *Yellowstone Kit v. State of Alabama,* 88 Ala. 196, 7 South. 338, 16 Am. St. 38, 7 L. R. A. 599, in the course of a learned discussion touching this subject, Justice Somerville, speaking for the court, said:

"It may be safely asserted, as the result of the adjudged cases, that the species of lottery, the carrying on of which is intended to be prohibited as criminal by the various laws of this country, embraces only schemes in which a valuable consideration of some kind is paid, directly or indirectly, for the chance to draw a prize. *United States v. Olney,* 1 Deady, 461, 1 Abb. (U. S.) 275; *Almshouse v. American Art Union,* 7 N. Y. 228; *Ehgrott v. New York,* 96 N. Y. 264, 48 Am. Rep. 622; *Bell v. State,* 5 Sneed, 507; *Com. v. Thacher,* 97 Mass. 583.

"There is no law which prohibits the gratuitous distribution of one's property by lot or chance. If the distribution is a pure gift or bounty, and not in name or pretense merely, which is designed to evade the law,—if it be entirely unsupported by any valuable consideration moving from the taker,—there is nothing in this mode of conferring it which is violative of the policy of our Statutes condemning lotteries or gaming.

. . .

"The cases on this subject are very numerous, and while the courts have shown a general disposition to bring within the term 'lottery' every species of gaming involving a distribution of prizes by lot or chance, and which comes within the mischief to be remedied,—regarding always the substance and not the semblance of things so as to prevent evasions of the law,—we find no decision in which the element of a valuable consideration parted with, directly or indirectly, by the purchaser of a chance, does not enter into the

transaction. *Buckalew v. State,* 62 Ala. 334; *State v. Bryant,* 74 N. C. 207; *Com. v. Wright,* 137 Mass. 250, 50 Am. Rep. 306; *State v. Clarke,* 33 N. H. 329, 66 Am. Dec. 723; *State v. Shorts,* 32 N. J. L. 398, 90 Am. Dec. 668; *Wilkinson v. Gill,* 74 N. Y. 63, 30 Am. Rep. 264; *Almshouse v. American Art Union,* 7 N. Y. 228; *State v. Mumford,* 73 Mo. 647; *Hull v. Ruggles,* 56 N. Y. 424; *Thomas v. People,* 59 Ill. 160; *Dunn v. People,* 40 Ill. 465; *Seidenbender v. Charles,* 4 Serg. & R. 151, 8 Am. Dec. 682; *United States v. Olney,* 1 Deady, 461; *Bell v. State,* 5 Sneed, 507; Bishop, Stat. Crimes, 2d ed. § 952; 2 Whart. Crim. Law, 9th ed. § 1491.''

The decision in *Cross v. People,* 18 Colo. 321, 32 Pac. 821, 36 Am. St. 292, is a well considered one of particular interest in our present inquiry, wherein Justice Goddard, speaking for the court, said:

''The gratuitous distribution of property by lot or chance, if not resorted to as a device to evade the law, and no consideration is derived, directly or indirectly, from the party receiving the chance, does not constitute the offense. In such case the party receiving the chance is not induced to hazard money with the hope of obtaining a larger value, or to part with his money at all; and the spirit of gambling is in no way cultivated or stimulated, which is the essential evil of lotteries, and which our statute is enacted to prevent. By the admitted facts it is shown that the plaintiffs in error gave business cards, which entitled the holders to a chance in a piano, to be distributed as the holders of such chances might elect. These tickets or chances were given indiscriminately to persons, whether they purchased goods of plaintiffs in error or not, to those who registered their names at their shoe store, and to those who, from a distance, sent the return postage. While it is admitted that Charles Linton purchased goods to the amount of one dollar at their store, and received one of these cards, it is admitted that such purchase, or any purchase of goods, was not a condition upon which the card was delivered. The fact that such cards or chances were given away to induce

persons to visit their store with the expectation that they might purchase goods, and thereby increase their trade, is a benefit too remote to constitute a consideration for the chances. Persons holding these cards, although not present, were, equally with those visiting their store, entitled to draw the prize. The element of gambling that is necessary to constitute this a lottery within the purview of the statute, towit, the paying of money, directly or indirectly, for the chance of drawing the piano, is lacking, and the transaction did not constitute a violation of the statute.''

The text and authorities cited in 17 R. C. L. 1222 support this view of the law; and our own decision in *Society Theatre Co. v. Seattle,* 118 Wash. 258, 203 Pac. 21, is in harmony with this view, though that decision was against the persons disposing of the chance tickets.

Our real problem then is as to whether or not any of the persons acquiring the numbered tickets, and thereby the chance of receiving some goods upon the distribution being made from the stage of the theatre, "paid or agreed to pay a valuable consideration for the chance." Manifestly, anyone who would acquire such chance by receiving a numbered ticket without paying for admission to the theatre, would not pay or agree to pay anything for the chance of receiving some goods. How then can it be said that those who paid admission to the theatre and received a numbered chance ticket at the same time, paid anything for such chance, when it is plain that they could have received such chance ticket for nothing without paying for admission to the theatre. It seems plain to me that the offering and giving of the numbered tickets to those who paid admission to the theatre was as much a pure donation or gift to them as the offering and giving to others would be a pure donation or gift to them, since the rights of both were exactly the same in so far as

their respective chances of having goods distributed to them upon the drawing of the duplicate numbered tickets are concerned; and both classes had absolutely equal opportunity to so acquire the chance tickets. To my mind it is wholly immaterial that no outsider availed himself of the offer of free tickets, as the theatre patrons generally availed themselves of the same offer of free tickets. It is not a question of who acquired tickets, but did appellants cause anyone to pay a consideration for any chance such tickets evidenced.

Many decisions are cited and relied upon by counsel for the prosecution, but all of them, when critically examined, will be found dealing with situations where the persons receiving the chance actually paid value therefor, though the chance may have been a pretended gift to him in connection with the sale of goods or something of value. In all those cases, the payment made by the one receiving the chance was not only for the goods or the thing of value which he received in any event, but was also for the chance to receive something else of value, because he could not acquire the chance of receiving something else of value unless he actually purchased something. Such, I think, are all of the decisions which counsel for the prosecution have brought to the support of their contention that the persons who paid for admission to the theatre were also paying for their chance numbered tickets. That contention would be sound only if no one but those who paid admission to the theatre were entitled to receive the chance tickets. Such, I think, is the plain difference between the cases relied upon by counsel for the prosecution and this case. Counsel for the prosecution rely particularly upon our decision in *Society Theatre Co. v. Seattle,* 118 Wash. 258, 203 Pac.

21, but that case, when critically examined, will be found to be like the others relied upon by them, in that no one acquired or could acquire any chance to win any prize other than those who bought admission tickets to the theatre.

I am of the opinion that, as a matter of law, appellants have not violated the provisions of our lottery statute above quoted, and that they were entitled to instructed verdicts of acquittal as moved for in their behalf at the conclusion of the trial in the superior court. The judgments of conviction rendered against appellants should be reversed.

TOLMAN, C. J., MACKINTOSH, and ASKREN, JJ., concur with PARKER, J.