[Cr. A. No. 960.   Appellate Department, Superior Court, Los Angeles County.—December 27, 1933.]

## THE PEOPLE, Respondent, v. SPYROS CARDAS, Appellant.

(2 Cal. Supp. 89.)

John B. Bertero for Appellant.

Ray L. Chesebro, City Attorney, Ernest K. Maine, Assistant City Attorney, and John L. Bland, Deputy City Attorney, for Respondent.

FOX, J.—Defendant was charged in count one with drawing a lottery in violation of section 320 of the Penal Code, and in count two with disposing of lottery tickets in violation of section 321 of said code. Following a plea of not guilty, the case was submitted to the court, without a jury, upon a stipulated statement of facts, and the defendant was found guilty on both counts. From this conviction he appeals.

The salient facts, as disclosed by the stipulation, are as follows: The defendant was the operator of a motion picture theater, located in the city of Los Angeles. Prior to August 16, 1933, he advertised by means of theater programs, newspapers, placards and on the screen, that the theater would give away, on the evening of August 16th, a prize consisting of two fully paid round trip tickets to Santa Catalina Island, to the holders of the lucky tickets. The prize tickets had printed on them the following: "Winning number will be announced in the theater and at the entrance, and the winner must be in or just outside the theater and claim the prize when the announcement is made." The tickets were placed in the hands of the public by the distribution in the vicinity of the theater of five thousand theater programs, each containing one of the tickets, and by handing two thousand tickets to passing motorists. Also, an employee of the theater was stationed between the street and the entrance to the theater, who gave prize tickets to all who asked them, and offered them to any person who approached within proximity of her. No charge was made for any of these prize tickets, nor was it necessary that an admission ticket to the theater be purchased. Outside the entrance to the theater and within view of all passers-by was a sign reading as follows: "Tonight—Free—Three day vacation trips to Catalina. The winner will be announced in the theater and at the entrance for the benefit of those wishing to wait outside." The cashier in the box office only sold admission tickets and did not have any prize tickets in her possession. A receptacle was placed outside the theater in which were deposited the stubs from the prize tickets. Such stubs were deposited therein by persons who purchased admission tickets, by those who were admitted to the theater free and by others who did not attend the show.

After the drawing had been held on the stage, the lucky numbers were announced both from the stage and outside the theater doors. Any person outside the theater who held a winning prize number was entitled to enter the theater for the purpose of claiming the prize, without charge. If such a person, however, stayed to see the show, he would be required to pay the regular admission charge. The winner of one of the prizes was a patron who had not purchased an admission ticket.

The question presented is whether or not the defendant was conducting a lottery as defined by section 319 of the Penal Code, for if he was not he could not be guilty of drawing a lottery in violation of section 320, or disposing of lottery tickets in violation of section 321. A lottery is defined as follows by section 319: "A lottery is any scheme for the disposal or distribution of property by chance, among persons who have paid or promised to pay any valuable consideration for the chance of obtaining such property or a portion of it, or for any share or any interest in such property, upon any agreement, understanding, or expectation that it is to be distributed or disposed of by lot or chance, whether called a lottery, raffle, or gift enterprise, or by whatever name the same may be known."

An analysis of the section and an examination of the authorities construing it and other similar statutory provisions disclose that there are three elements necessary to constitute a lottery. These elements are: (1) The disposition of property, (2) upon a contingency determined by chance, (3) to a person who has paid a valuable consideration for the chance of winning the prize, that is to say, one who has hazarded something of value upon the chance. (*People* v. *Hecht*, 119 Cal. App. (Supp.) 778 [3 Pac. (2d) 399]; 17 R. C. L. 1222; 38 C. J. 289.)

It will at once be observed that the first and second elements are present in the instant case. The problem thus narrows itself down to the question: Was a valuable consideration paid for the chance of winning the prize by those who stood to win? Stated another way: Was anything of value hazarded upon the chance by them?

Counsel for the People argue that patronage from the ticket holders as a whole constituted consideration for the distribution of the prize even though the individual

holders of tickets had not parted with consideration for the individual ticket held by them. This argument apparently proceeds upon the theory that the element of consideration is established by showing that the defendant received something of value in return for the distribution of the prizes. The question of consideration is not to be determined from the standpoint of the defendant, but from that of the holders of prize tickets. The question is: Did the holders of prize tickets pay a valuable consideration for the chance? Certainly those who received prize tickets without buying an admission ticket did not pay anything for the chance of getting the prize. They did not hazard anything of value. It would then seem to follow that those who purchased admission tickets and received prize tickets, not at the box office but from another employee, could not be said to have paid a consideration for the prize tickets since they could have received them free.

The Supreme Court of Colorado, in *Cross* v. *People*, 18 Colo. 321 [32 Pac. 821, 36 Am. St. Rep. 292], has stated certain principles with respect to lotteries which we believe are sound and, in general, applicable to the instant case. The court said:

"The gratuitous distribution of property by lot or chance, if not resorted to as a device to evade the law, and no consideration is derived, directly or indirectly, from the party receiving the chance, does not constitute the offense. In such case the party receiving the chance is not induced to hazard money with the hope of obtaining a larger value, or to part with his money at all; and the spirit of gambling is in no way cultivated or stimulated, which is the essential evil of lotteries, and which our statute is enacted to prevent. By the admitted facts it is shown that the plaintiffs in error gave business cards, which entitled the holders to a chance in a piano, to be distributed as the holders of such chances might elect. These tickets or chances were given indiscriminately to persons, whether they purchased goods of plaintiffs in error or not, to those who registered their names at their shoe store, and to those who, from a distance, sent the return postage. While it is admitted that Charles Linton purchased goods to the amount of one dollar at their store, and received one of these cards, it is admitted that such purchase, or any purchase of goods,

was not a condition upon which the card was delivered. The fact that such cards or chances were given away to induce persons to visit their store with the expectation that they might purchase goods, and thereby increase their trade, is a benefit too remote to constitute a consideration for the chances. Persons holding these cards, although not present, were, equally with those visiting their store, entitled to draw the prize. The element of gambling that is necessary to constitute this a lottery within the purview of the statute, to-wit, the paying of money, directly or indirectly, for the chance of drawing the piano, is lacking, and the transaction did not constitute a violation of the statute.''

An examination of the cases holding certain schemes, apparently somewhat similar to the one here in question, to be lotteries, discloses vital points of distinction. In general they fall into two groups. In one group it will be found that the prize tickets were only furnished to customers—those who purchased something. The payment made by the customer was for both the articles purchased and the prize ticket—part of the consideration was for the ticket. *State v. Powell*, 170 Minn. 239 [212 N. W. 169], and *Matta v. Katsoulas*, 192 Wis. 212 [212 N. W. 261, 50 A. L. R. 291], are typical of this group. The decisions, however, are not entirely uniform in holding even such a scheme to be a lottery. *Williams Furniture Co.* v. *McComb Chamber of Commerce*, 147 Miss. 649 [112 So. 579, 57 A. L. R. 421], holds it not to be.

In the other group, it will be found that while the distribution of prize tickets purported to be both to non-customers as well as to customers, in fact the distribution to the former class was negligible. *Featherstone* v. *Independent Service Station Assn.*, (Tex. Civ. App.) 10 S. W. (2d) 124, is typical of this group, where there was no general free distribution of the tickets to the public as in the case at bar.

A word should be said about *State* v. *Danz*, 140 Wash. 546 [250 Pac. 37, 48 A. L. R. 1109], since it was cited by counsel for both sides. In that case the Supreme Court of Washington, by a five to four decision, held a scheme resembling that presented in this case to be a lottery. That case may properly fall in the group last mentioned, since no prize tickets were in fact given to anyone who did not buy an

admission ticket to the theater. In any event, the reasoning in the minority opinion, to the effect that no consideration was paid by the holders of the prize tickets, is much more persuasive to us.

Our conclusion is that the holders of the prize tickets did not pay a valuable consideration for the chance of winning the prize — did not hazard anything of value upon the chance—and consequently the scheme was not a lottery, and therefore the defendant was not guilty of having violated sections 320 and 321 of the Penal Code.

The judgment of the trial court is reversed, with directions to find defendant not guilty.

Bishop, P. J., and Hahn, J., concurred.