LITTLE RIVER THEATRE CORPORATION, JOHN A. CUNNINGHAM, and A. C. BROMBERS, v. STATE, *ex rel.* SCHUYLER C. HODGE.

185 So. 855.
Opinion Filed January 20, 1939.

*Loftin, Stokes & Calkins,* for Appellants;

*Whitfield & Whitfield,* and *Albert B. Bernstein,* for Appellee.

PER CURIAM.—This case is here on appeal from a temporary restraining order enjoining or restraining the defendants from operating a plan or scheme commonly known as "Bank Night" in the City of Miami, Dade County, Florida. The suit was brought under Sections 5029 and 5030 C. G. L., by Schuyler C. Hodge, a citizen and resident of Dade County, Florida, of many years standing. An answer was filed and the right of the plaintiff below to maintain the suit at bar was not questioned. This Court in construing Sections 5029 and 5030, *supra,* held that a private citizen of the county affected may institute a suit in equity in the name of the State to suppress a public nuisance, without first requesting the public officers thereof to bring suit. See Pompano Horse Club v. State, 93 Fla. 415, 111 So. 801, 52 A. L. R. 51. We therefore held that the suit at bar was properly brought.

Counsel for the respective parties are in substantial accord as to the facts here involved, viz.: The Little River Theatre Corporation operates a theatre in the suburbs of the City of Miami. The general public and persons buying tickets at the theatre are asked to register their names in a book in the lobby of the theatre, and upon registering are assigned numbers, which numbers are also written in the registration book. On certain nights known as "bank nights" numbers corresponding to the person so registered are placed in a drum on the stage of said theatre, when the drum is spun and a blindfolded child selects a number therefrom. The registration books are consulted and the person assigned said number so selected by the blindfolded child is declared the winner. The winner's name is announced and three minutes is permitted for the winner to present himself on the inside of the theatre and claim the prize, but he is

not required to have a ticket to enter the theatre when his name is called. The prizes range from $50.00 to $300.00 and are actually given away. If the prize winner is not in the theatre when the winning number is drawn, or if he does not come into the theatre within three minutes thereafter, the prize is not awarded but the amount thereof is added to the amount to be given away at the next bank night drawing. Five out of seven prize winners paid admission to the theatre when the winning numbers were drawn, while two out of seven winners were outside the theatre but in the immediate vicinity and came inside the theatre and claimed the prize within three minutes after the number was announced. A person may participate in the drawing without purchasing a ticket to the theatre and the prize is awarded on each Tuesday and Friday nights. People are attracted to the theatre on "bank nights" and gather in an adjoining vacant lot within a radius of two or three blocks of the theatre and can present themselves if their names are called. The prize may be claimed by any person who registers and whose name is drawn and called, whether such person has or has not ever been in the theatre or has or has not ever purchased a ticket to the theatre. The same picture is exhibited on two successive nights, one of which is "bank night," and the attendance at said theatre on "bank night" was anywhere from two to seven times more than the attendance on the other night when the same picture was shown. The plan of "bank night" advertised the theatre and increased its business.

The question for decision here is: Does the above statement of facts constitute a lottery in violation of Sections 7667 and 7669, and, if so, may the same be enjoined as a nuisance and is it prohibited by Section 7832 C. G. L.? The lower court answered this question in the affirmative.

Section 7667 C. G. L. provides:

"7667. (5509). *Setting up Lottery Prohibited.*—It shall be unlawful for any person, firm or corporation in this State to set up, promote or conduct any lottery for money or for anything of value; or by means of any lottery to dispose of any money or other property of any kind whatsoever; or to conduct any lottery drawings for the distribution of prizes by lot or chance, or to advertise any such lottery scheme or device in any newspaper or by circulars, posters, pamphlets or otherwise; or to sell, or to offer for sale, or to transmit, by mail or otherwise, any lottery tickets, coupons, or share in or fractional part of any lottery ticket, share or coupon; or to attempt to operate, conduct or advertise any lottery scheme or device; or to have in his, their or its possession any lottery wheel, implement or device whatsoever for conducting any lottery or scheme for the disposal by lot or chance of anything of value; or to have in his, their or its possession any lottery ticket, or evidence of any share or right in any lottery ticket, or in any lottery scheme or device; or to have in his, their or its possession any lottery advertisement, circular, poster or pamphlet, or any list or schedule of any lottery prizes, gifts or drawings, or to aid or assist in the setting or conducting of any lottery, either by writing, printing or otherwise; or to be interested in, or connected in any way with any lottery or lottery drawing; or to aid or assist in the sale, disposal or procurement of any lottery ticket, coupon, share or right to any drawing therein. Any violation of this section shall be a felony, and shall be punished by a fine of not less than five hundred dollars, nor more than five thousand dollars, or by imprisonment in the State penitentiary not less than one year, or more than ten years."

Likewise, Section 7669 C. G. L. provides:

"7669. (5511). *Plays at Games of Chance by Lot.*—

Whoever sets up, promotes or plays at any game of chance by lot or with dice, cards, numbers, hazard or any other gambling device whatever for, or for the disposal of money or other thing of value or under the pretext of a sale, gift or delivery thereof, or for any right, share or interest therein, shall be fined not exceeding one hundred dollars or be imprisoned not exceeding three months."

And Section 7832 (5639) *Places Declared a Nuisance; May be Abated and Enjoined.*—Whoever shall erect, establish, continue, or maintain, own or lease any building, booth, tent or place which tends to annoy the community or injure the health of the community, or become manifestly injurious to the morals or manners of the people as described in Section 7817, or shall be frequented by the class of persons mentioned in Section 7655, or any house or place of prostitution, assignation, lewdness or place or building where games of chance are engaged in in violation of law or any place where any law of the State of Florida is violated, shall be deemed guilty of a nuisance, and the building, erection, place, tent or booth and the furniture, fixtures and contents are also declared a nuisance, and all such persons, places, shall be abated and enjoined as provided in Article 19, Chapter X, Title III, Second Division of these Compiled General Laws."

Section 7667, *supra,* makes it unlawful for persons, firms or corporations to conduct any lottery for money or other thing of value, or by means of a lottery to dispose of anything of value, or to conduct any lottery, drawings for distribution of prizes, or to advertise any such lottery scheme or device, or to sell or offer for sale any lottery tickets or coupons or to attempt to do any such things, or to have in one's possession any lottery wheel or any lottery ticket, or any lottery advertisement or any list of lottery prizes, or to assist in conducting any lottery, or to be interested in

any way with any lottery or lottery drawing, or to assist in the sale, etc., of any lottery tickets. The language employed by the Legislature is broad and its objective, no doubt, was to render unlawful lotteries, as above pointed out. From the admitted facts the appellants advertised their plans, schemes or devices by circulars, posters, pamphlets and placards and requested the public generally to register their names in a book kept at the theatre and a number assigned to the name at the time of registration and the number was placed in a drum or device, and on "bank night" a girl blindfolded took from the drum a number, and the number was used to determine the winner of the prize at the drawing. See Lee v. City of Miami, 121 Fla. 93, 163 So. 486, 101 A. L. R., 1115.

It becomes pertinent to determine, in the consideration of the statutes, *supra,* what is meant by a lottery. It may be well to consider the rulings of courts of last resort of other States having statutes similar to Sections 7667 and 7669 C. G. L. *supra.* In Grimes v. State, 235 Ala. 192, 178 So. 73, we find a lottery statute in many respects similar to Sections 7667 and 7669, *supra,* and that Court in holding "bank nights" unlawful, in part, said:

"The legality of "bank nights," at motion-picture theatres, to say nothing of other devices so prevalent at this time, is of such general interest, both to the motion-picture industry and to the public, that this court deems it proper to give a brief but definite statement of the law sustaining the decision of the Court of Appeals now under review. * * *

"The lust for profit by catering to and commercializing the gambling spirit has given rise to many ingenious devices resulting in very many decisions by the courts dealing with the application of lottery statutes similar to ours.

"Since the appearance of bank nights in motion-picture

theatres, themselves varying somewhat in detail, numerous cases involving their legality *vel non* under lottery statutes have given rise to prolonged discussion. The particular plan of operation here involved has been considered by eminent courts quite recently. * * *

"Without undue elaboration we give the following expression of our views, as best supported by reason and the trend of the best considered cases:

. "(1) Without dispute a lottery has three elements: (1) A prize, (2) awarded by chance, (3) for a consideration. The presence of the first two elements in bank night operations is without dispute.

"2. Is there a consideration within the spirit and purpose of our lottery laws?

"It should be kept in mind that the penal statute is directed to the operator. Is there a consideration moving to him?

"The very fact that it is a business enterprise intended to swell the receipts from paid admissions to the theatre evidences an intention to garner a profit from the gift enterprise. For practical purposes the measure of the consideration moving .to him is the excess of receipts from paid admissions on bank nights, over what they would have been for the entertainment in the absence of the bank night attraction. * * *

"Theorize as one may, it remains, that looking through form and dealing with reality, the plan is intended to fill the. theatre, not the lobby outside. The more on the outside, the less the chance of those inside. To minimize the one and increase the other is part of the necessary intendment.

"The results, the success of the plan in swelling the patronage, and consequent income through the scheme of chance are the final proof of a consideration paid and a

consideration received. Certainly it cannot be questioned that such is the result intended by the bank night operator. Without it, the bank night would speedily cease to be.

"That the prize may go to some one who has paid nothing does not negative the fact that many have paid for their chance. Because some have not been drawn into the gambling phase does not render it any the less a lottery, with whatever of evil it engenders, as to the large public who have paid."

In the case of Shanchell v. Lewis Amusement Co., (La. App., page 428), 171 So. 426, that Court considered and defined a lottery, viz.:

" 'A lottery is a distribution of prizes and blanks by chance; a game of hazard, in which small sums are ventured for the chance of obtaining a larger value, either in money or in other articles.' Worcester's Dict.

" 'A scheme for the distribution of prizes by lot or chance.' Webster's Dict.

" 'Any scheme whereby one, on paying money or other valuable thing to another becomes entitled to receive from him such a return in value or nothing, as some formula of chance may determine.' Bishop, Stat. Crim. Sec. 952.

"In the Kahn Case (City of Shreveport v. Kahn, 136 La. 371, 378, 67 So. 35, 37), Kahn, the proprietor of a cigar store, operated a punchboard perforated with six hundred holes and covered with paper. In each hole a number was designated. Any person purchasing five cents' worth of cigars or tobacco or other merchandise sold by Kahn was given the privilege of punching one of these holes and taking the number therefrom. If the number thus obtained corresponded with a number attached to twelve gold-plated pencils, the holder was given one of the pencils. In speaking of this device, the court said: 'We are of the opinion that the scheme of the defendant for the dis-

tribution of his pencils by chance constituted a lottery, and that he sold tickets entitling the holders to participation in the drawings.' "

In the case of Barker v. State, 56 Ga. App. 705, 193 S. E. 605, we find a Code similar to Sections 7667 and 7669, *supra.* The defendant Barker was charged with the criminal violation of the provisions of the Code while conducting "Bank Night" at defendant's theatre at Albany, Georgia. Counsel for defendant contended that the provisions of the Georgia Code against lotteries had not been violated. The facts constituting the Code violation were set forth in the accusation and the Code made the facts so recited a misdemeanor. The facts appearing in the accusation filed by the Solicitor of the City Court of Albany, Georgia, are similar to the admitted facts in the case at bar. The Court of Appeals of Georgia sustained the accusation filed by the Solicitor and in part said:

"* * * While it may be said that there were two different classes of possible prize winners, the holders of free registration and those who paid at the door and received a registration number plus a ticket, or a ticket plus a registration number, yet these two classes formed a group whose sphere is restricted to the registrants and the members of this group of registrants are the only players or participants in the game or scheme. Who obtained chances to play? Only the members of this group, the registrants. Who paid for all the chances? All the chances were paid for by the group composed of two subdivisions—those who purchased tickets and registered and those who registered only. 'If in the flourishing days of the Louisiana lottery its management had advertised that it would give a free ticket to the president of every bank in the City of New Orleans, that would not have changed the scheme from a lottery, whether or not any one or all of such free tickets were

accepted." State v. Danz, 140 Wash. 546, 250 P. 37, 38, 48 A. L.R. 1109. If the proprietor's hope and intention in allowing the registration was that the persons registering might be induced to purchase a ticket and enter the theater to observe the performance and the operation of drawing the number by lot and be present to claim the prize, the mischief is really the same in the present case as if only those who actually bought tickets and entered were allowed to claim the prize, for an inducement is held out to the same class of people to purchase a ticket, to-wit, all of those who register. In the instant case all chances are paid for in mass by the general body of purchasers of tickets, although an individual registrant may not pay for his chance. Therefore, the theater which distributed the chances is paid if the sale of tickets be looked at as a whole, although some chances are given away. Wills v. Young & Stembridge, L. R. K. B. D. 1907, 1, 448. In the present instance all chances are paid for in bulk by the general body of purchasers of tickets, although an individual purchaser may, or may not, pay for his chance, yet one of these purchasers whether he has paid for his ticket himself, or whether his ticket was paid for by another individual, or whether his ticket was paid for collectively by his entire group, cannot participate in the prize contest unless he has registered and a number assigned to him is placed on a card and the card so numbered is placed in the container on the stage to be removed by lots."

See Jorman v. State, 54 Ga. App. 738, 188 N. E. 925.

The case of Iris Amusement Corp. v. Kelly, 366 Ill. 256, 8 N. E. (2d) 648, was a suit to restrain the officials of the City of Chicago from the enforcement of an ordinance of said city making it unlawful to conduct a "lottery" when 150 theatres of the City of Chicago had adopted an advertisement plan known as "Bank Night". It was

contended that the money awarded on "Bank Nights" by the many theatres of said City was a gift in the form of advertisement and in no manner offended the ordinance making it unlawful to conduct a lottery. The ordinance resembles in many respects Sections 7667 and 7669 C. G. L. The Court sustained a motion to dismiss the bill of complaint for want of equity and refused the restraining order against the enforcement of the ordinance and in doing so, in part, said:

"The ingenuity of the 'Bank Night' scheme forcibly illustrates the dangers pointed out by the Michigan court which grow out of attempting exact definition of generic and well understood words. There are many words in the law such as 'fraud,' 'confidence game,' and others, which are their own best definition and which are better left with some elasticity lest the ingenuity of nefarious minds devise means for evading the letter of the law while transgressing its spirit. In this scheme there is present every element of the evils attendant upon mass gambling. A small stake concealed within the price of admission gives its chance for a large prize, which may become large enough to arouse intense cupidity; there is the excitement of drawing a lucky number with its attendant exultation for one fortunate individual; there is depression and disappointment for a thousand losers, many of whom must think enviously of what they could do with so much money had they won it, and there is the constant temptation to continue to play in the hope of winning. We have thus created cupidity, envy, jealousy and temptation—the very things sought to be avoided by the enlightened public policy of most of the world which has outlawed lotteries. If this evasion could be legalized for a small admission fee and a small cash prize, both the fee and the prize could be augmented to more dangerous proportions. It is not difficult to foresee

that competition between theatre owners might quickly produce such a result.

"Quite contrary to plaintiff's argument, the element of price is present. As the Massachusetts court said, we may look at this thing realistically and sensibly. We know that those within the theatre pay for any chance any one outside may have to win. Furthermore, we know that the chance of an outdoor participant is decidedly limited by the requirement that he reach the stage in a short time. We know that if any appreciable number of outside persons are to participate in the drawing they must loiter on the street, obstructing normal traffic, and that they must crowd the lobby and theatre exits to the danger of those within. The price for a fair and reasonable chance to win is the cost of a ticket of admission to the theatre, which is the object of the plan, and thus a lottery is completed, even under the plaintiff's own definition and contention.

"Our public policy against lotteries expressed in two Constitutions, in the Criminal Code, and in the ordinance before us, is much too firmly rooted to be evaded by any chimerical device. Our conclusion is that the operation of the scheme outlined in the amended complaint constitutes a lottery and that the plaintiffs have no standing in a court of equity for its furtherance or protection."

In the case of Sproat-Temple Theatre Corporation v. Colonial Theatrical Enterprises, Inc., 276 Mich. 127, 267 N. W. 602, the Court on appeal sustained a restraining order, viz.:

"'from distributing, selling or giving away tickets, slips, coupons or tokens of any character evidencing the right of the holder to participate in drawing any prizes of cash or other things of value in said theatres, and from holding any drawings and from determining by lot the winning

ticket, slip, coupon or token holders in or about the said theatres.' "

The Supreme Court of Michigan in upholding the restraining order, *supra,* in part, said:

" 'The three essential elements of a lottery are: First, consideration; second, prize; and third, chance. * * * But what may appear on its face to be a gratuitous distribution of property or money has frequently been declared to be merely a device to evade the law, a notable example of such a device, which was held to be a lottery, being the gratuitous distribution by newspaper proprietors of medals bearing certain numbers, which presented the possibility of obtaining a prize without the actual purchase of a chance.' 17 R. C. L. 1222.

"We think the facts in the case at bar are similar to those involved in the case of Society Theatre v. Seattle, 118 Wash. 258, 203 P. 21, 22. In that case an association of merchants distributed tickets to patrons of moving picture houses after the patrons had been admitted to the theatres in the usual manner. Following the performance this association conducted a drawing by lot and those holding the lucky tickets received various prizes of merchandise. No extra charge was made for admission, and the court said: 'The elements of a lottery are: First, a consideration; second, a prize; and, third, a chance. It needs no argument to show that the second and third elements appear in the business conducted by respondent. But it is argued that the element of consideration does not appear because the patrons of the theatres pay no additional consideration for entrance thereto, and pay nothing whatever for the tickets which may entitle them to prizes. But while the patrons may not pay, and the respondents may not receive any direct consideration, there is an indirect consideration paid and received. The fact that prizes of more or less value

are to be distributed will attract persons to the theatres who would not otherwise attend. In this manner those obtaining prizes pay consideration for them, and the theatres reap a direct financial benefit.' "

See State v. Fox Kansas Theatre Co., 144 Kan. 687, 62 Pac. (2d) 929, 109 A. L. R. 698; United Detroit Theatres Corp. v. Colonial Theatrical Enterprises, 280 Mich. 425, 273 N. W. 756; State v. McEwan, (Mo. Sup.) 120 S. W. (2d) 1098 (not yet reported in State Rep.); State, *ex rel.* Hunter v. Fox Beatrice Theatre Corp., 133 Neb. 392, 275 N. W. 605; City of Wink v. Griffith Amusement Corp., 129 Tex. 40, 100 S. W. (2d) 695; Cole v. State, 143 Tex. Cr. Rep. 548, 112 S. W. (2d) 725; Central States Theatre Corp. v. Patz (D. C. S. D. Iowa), 11 Fed. Supp. 566; General Theatres, Inc., v. Metro-Goldwyn-Mayer Dist. Corp. (Colo.) 9 Fed. Supp. 546; Affiliated Enterprises, Inc., v. Gantz (C. C. A. 10th Cir.), 86 Fed. (2d) 597; State v. Wilson, 169 Vt. 349, 196 Atl. 757; State v. Danz, 140 Wash. 546, 250 Pac. 37, 48 A. L. R. 1109; Society Theatre v. City of Seattle, 118 Wash. 258, 203 Pac. 21.

The decisions of the different States controlling "Bank Night" are in irreconcilable conflict. In many of the States the decisions construe statutes controlling lotteries and necessarily the statutes are differently worded. We have examined many thereof and compared the same with Sections 7667 and 7669, *supra,* and the cases interpreting these different statutes similar to ours generally hold that "Bank Night" as described in the admitted statement of facts is condemned thereby and by our statutes against lotteries as a "plan or a scheme for the disposal by lot or chance of anything of value."

Counsel for appellants to sustain their contention that the admitted statement of facts did not offend the statutes, *supra,* cite: State v. Hundling 220 Ia. 1369, 264 N. W.

608; City of Roswell v. Jones, 41 N. M. 258, 67 Pac. (2nd) 286; People v. Shafer, 289 N. Y. Supp. 649, affirmed 273 N. Y. 475, 6 N. E. (2d) 410; Griffieth Amusement Co. v. Morgan (Tex. Civ. App.), 98 S. W. (2d) 844; People v. Cardas, 137 Cal. App. 788, 28 Pac. (2d) 99; State v. Eames, 87 N. H. 477, 183 Atl. 590; State v. Stern, 201 Minn. 139, 275 N. W. 626; State, *ex rel.* District Atty. Gen. v. Crescent Amusement Co., 170 Tenn. 351, 95 S. W. (2d) 310; Commonwealth v. Wall, (Mass.) 3 N. E. (2d) 28; Affiliated Enterprises, Inc. v. Rock-Ola Mfg. Corp., 23 Fed. Supp. 3. We have examined these authorities and it appears that some thereof sustain appellants' contention, while the statutes construed by some of the cited cases are different from our Florida statutes in many important essentials, while others are not the better reasons cases.

The case of Dorman v. Publix-Saenger-Sparks Theatres, Inc., (opinion filed at this Term of Court and not yet reported) was a suit to recover the amount of a winning ticket or award at a drawing on a "Bank Night" by the defendant theatre. On the pleadings it was held in this Court that the declaration stated a cause of action and it was a question of fact for a jury under appropriate instructions, to decide whether or not the scheme or plan operated by the defendant theatre was a lottery within Sections 7667 and 7669, C. G. L. There is no disputed question of fact in the case at bar. The cases of Creash v. State, 131 Fla. 111, 179 So. 149, and Biley v. Clendenon, 127 Fla. 10, 172 So. 94, are not in point.

The authorities are in accord that a lottery has three elements: first, a prize; second, an award by chance; and, third, a consideration. It is emphasized here that the agreed facts do not have or possess these three essentials. The facts admit that the prizes run from $50.00 to $500.00 and are acutally given away. The winner can obtain the award

without a ticket but is required to sign a book when a number is assigned to his name. The second essential being an award by chance. The facts show that on "Bank Night" when a drawing is had numbers corresponding to the names of persons so registered are placed in a drum on the stage of the theatre, when the drum containing the names is spun and a blindfolded child selects a number therefrom, when the registration list is consulted and the name having the number as selected by the child is declared the winner, and is awarded the prize. The fact that a person is awarded the prize on "Bank Night" and not buying a ticket to the theatre, as we see it, is wholly immaterial. The third essential being a consideration, the facts show that the attendance at the theatre on Bank Night is from two to seven times greater than on the other night when the same picture was shown. Bank Night advertises the theatre, increases the attendance, and the receipts show a material enhancement. When we visualize substance rather than form, the theatre management desired to fill the theatre by the Bank Night method. It is clear that the management of the theatre was not interested in filling the lobby outside of the theatre, or the vacant lots within a radius of two or three blocks, but the sole objective was to increase the attendance upon the theatre by the advertisement of Bank Night and as an incident the revenue of the theatre was increased. We therefore hold that the Bank Night methods as disclosed by the admitted statement of facts is a lottery and prohibited by the statutes, supra.

Careful consideration has been given by this Court to each contention made by counsel for the respective parties as disclosed by the briefs and argument at the bar of this Court. We are not unmindful of the far reaching effect of this opinion on the theatre business of Florida. It is the duty of this Court to construe and interpret statutes accord-

ing to established rules. The wisdom or folly of legislation, and the responsibility therefor, rests with the Legislature under our system of government.

We fail to find error in the record. The order or decree appealed from is hereby affirmed.

TERRELL, C. J., and WHITFIELD, BROWN, BUFORD and CHAPMAN, J. J., concur.

THOMAS, J., not patricipating, as authorized by Section 4687, Compiled General Laws of 1927 and Rule 21-A of the Rules of this Court.