Honorable Lawson Lamar State Attorney
QUESTION:
Does participation in a fantasy sports league whereby contestants pay a fee for the opportunity to select actual professional sports players to make up a fantasy team whose actual performance statistics result in cash payments to the contestants with the best fantasy team violate Florida's gambling laws?
SUMMARY:
Section 849.14, F.S., prohibits the operation of and participation in a fantasy sports league whereby contestants pay an entry fee for the opportunity to select actual professional sports players to make up a fantasy team whose actual performance statistics result in cash payments from the contestants' entry fees to the contestant with the best fantasy team.
You ask whether the formation of a fantasy football league by a group of football fans in which contestants pay $100 for the right to "manage" one of eight teams violates the state's gambling laws. You state that these teams are created by contestants by "drafting" plays from all current eligible National Football League (NFL) members. Thus, these fantasy teams consist of members of various NFL teams.
According to your letter, each week the performance statistics of the players in actual NFL games are evaluated and combined with the statistics of the other players on the fantasy team to determine the winner of the fantasy game and their ranking or standing in the fantasy league. No games are actually played by the fantasy teams; however, all results depend upon performance in actual NFL games. Following completion of the season, the proceeds are distributed according to the performance of the fantasy team.[1]
You state that fantasy baseball leagues, in which professional baseball players and their performance statistics are used in similar contests, are conducted in a similar manner.
Florida's gambling laws, generally codified in Ch. 849, F.S., primarily concern games of chance rather than contests of skill. For example, lotteries, consisting of a prize awarded by chance for consideration,[2] are generally prohibited by s.849.09, F.S.
Contests in which the skill of the contestant predominates over the element of chance, such as in certain sports contests, do not constitute prohibited lotteries.[3] This office has previously recognized that golf or bowling tournaments are predominately contests of skill.[4] Similarly, football and baseball games would appear to be predominately contests of skill even though an element of chance may also be involved. It might well be argued that skill is involved in the selection of a successful fantasy team by requiring knowledge of the varying abilities and skills of the professional football players who will be selected to make up the fantasy team.
Section 849.14, F.S., however, provides in part:
 Whoever stakes, bets or wagers any money or other thing of value upon the result of any trial or contest of skill, speed or power or endurance of man or beast . . . or whoever knowingly becomes the custodian or depositary of any money or other thing of value so staked, bet, or wagered upon any such result . . . shall be guilty of a misdemeanor.
The statute thus prohibits stakes, bets or wagers on the results of any contests of skill. In an early decision on the state's gambling laws, The Supreme Court of Florida found a violation of law in both games of chance and contests of skill where wages, bets or money were at stake, regardless of "whether the parties betting be the actors in the event upon which their wager is laid or not . . . ."[5]
The courts, however, have distinguished between a "purse, prize or premium" and a "stake, bet or wager." In Pompano Horse Club v. State,[6] The Supreme Court of Florida stated:
[I]n the former the donor or person offering the [prize or purse] has no chance of gaining back the thing offered but, if he abides by his offer, he must lose it, whereas in the latter each party interested therein has a chance of gain and suffers a risk of loss.
This distinction was reaffirmed by the Court in Creash v. State,[7]
which stated:
In gamblers' lingo, "stake, bet or wager" are synonymous and refer to the money or other thing of value put up by the parties thereto with the understanding that one or the other gets the whole for nothing but on the turn of a car, the result of a race, or some trick of magic. A "purse, prize, or premium" has a broader significance. If offered by one (who in no way competes for it)to the successful contestant in a fete of mental or physicalskill, it is not generally condemned as gambling, while if contested for in a game of. . . . chance, it is so considered. . .It is also banned as gambling if created . . .by . . .contributing to a fund from which the "purse, prize, or premium"contested for is paid, and wherein the winner gains, and the other contestants lose all. (e.s.)
According to your letter, the contestants pay $100 for the right to participate in the fantasy games by managing one of eight teams. The $800 in proceeds from the entry fees are use to make up the prizes. Such moneys, therefore, clearly appear to qualify as a "stake, bet or wager" as defined by the courts.[8]
Moreover, such moneys have been staked, wagered or bet on the result of a contest of skill. While the skill of the individual contestant picking the members of the fantasy team is involved, the prizes are paid to the contestants based upon the performance of the individual professional football players in actual games.
Accordingly, I am of the opinion that the operation of a fantasy sports league such as described in your letter would violate s.849.14, F.S.
RAB/tjw
[1] According to your letter, the entry fees are distributed as follows:
Regular season games (64 games at $9 per win) . . . . . . . $576 Second round play-off games (4 games at $10 per win) . . . . . . . . . . . . . . . . . . 40 Conference champions (2 at $25 per win) . . . . . . . . . . . . 50 Super Bowl champion . . . . . . . . . . . . . . . . . 50 Super Bowl runner-up . . . . . . . . . . . . . . . . 24 Leading individual scorer . . . . . . . . . . . . . . . . . . 10 Leading scoring team . . . . . . . . . . . . . . . . . . . 10 Longest touchdown run . . . . . . . . . . . . . . . .. . . . 10 Longest touchdown pass thrown . . . . . . . . . . . . . . . . . . 10 Longest touchdown pass reception. . . . . . . . . . . . . . . . . 10 Longest field goal . . . . . . . . . . . . . . . . . . . 10
[2] See, Little River Theater Corporation v. Stateex rel. Hodge, 185 So. 855 (Fla., 1939), discussing the elements of a lottery.
[3] See, e.g., AGO's 90-35 and 55-189.
[4] See, AGO 66-41.
[5] McBride v. State, 22 So. 711, 713 (Fla. 1897).
[6] 111 So. 801, 813 (Fla. 1927).
[7] 179 So. 149, 152 (Fla. 1938).
[8] Compare, AGO 90-58 in which this office concluded that a contest of skill where the contestant pays an entry fee,which does not make up the prize, for the opportunity to win a valuable prize by the exercise of skill, does not violate the gambling laws of this state.