Dear Sheriff White:
You have asked for my opinion on substantially the following questions:
1. Does section 849.0931, Florida Statutes, as amended by Chapter 2007-228, Laws of Florida, require that charitable, nonprofit or veterans organizations conduct "real time" bingo games at designated locations in order to sell "instant bingo" tickets or can the amendment be read to allow any charitable, nonprofit or veterans organization to sell "instant bingo" tickets regardless of whether they conduct regular bingo games at designated locations?
2. Do machines that dispense "instant bingo" tickets after insertion of money violate section 849.16, Florida Statutes, such that their use would constitute a violation of section 849.15, Florida Statutes, prohibiting the manufacture, sale, or possession of coin-operated devices?
Question One
The game of bingo is considered to be a form of lottery.[1] The Florida Constitution generally prohibits lotteries, other than certain pari-mutuel pools, [2] with the exception of lotteries operated by the state.[3] Bingo also constitutes gambling within the scope of Chapter 849, Florida Statutes, which states that "[w]hoever plays or engages in any . . . game of chance, at any place, by any device whatever, for money or other thing of value, shall be guilty of a misdemeanor of the second degree, punishable as provided in s. 775.082 or s. 775.083."[4]
Bingo has been recognized as gambling within the terms of section 849.01, Florida Statutes.[5] Section 849.0931, Florida Statutes, removes bingo from the scope of Chapter 849, Florida Statutes, provided the bingo is conducted within certain statutorily defined limits. The effect of section 849.0931, Florida Statutes, is merely to eliminate bingo from the gambling chapter when played within the limits of the statute.[6]
Chapter 849, Florida Statutes, authorizes certain nonprofit or veterans? organizations to conduct bingo games. These organizations must be engaged in charitable, civic, community, benevolent, religious, or scholastic works, or similar activities, and must have been in existence and active for a period of three years or more.[7] If an organization is not engaged in charitable, nonprofit, or veterans' efforts, it may conduct bingo games so long as all of the proceeds from the games are returned to the players in the form of prizes.[8]
In 2007, the Legislature amended section 849.0931, Florida Statutes, to authorize "instant bingo" games. Chapter 2007-228, Laws of Florida, the "Evelyn Wiesman-Price Act,"[9] provides new definitions describing the tickets and the game of instant bingo, providing specifications for the content of the tickets, their manufacture, and the manner in which instant bingo tickets are to be sold and distributed in Florida.
Section 840.0931(1)(f), Florida Statutes, provides a definition for "instant bingo":
"`Instant bingo' means a form of bingo that is played at the same location as bingo, using tickets by which a player wins a prize by opening and removing a cover from the ticket to reveal a set of numbers, letters, objects, or patterns, some of which have been designated in advance as prize winners."
Thus, the definition of "instant bingo" includes the requirement that instant bingo be "played at the same location as bingo[.]"
Legislative history relating to the adoption of CS/CS/SB 500 which became Chapter 2007-228, Laws of Florida, indicates that the language "played at the same location as bingo" was intended to clarify that "instant bingo tickets may only be played where authorized bingo games are played."[10] The primary purpose of statutory construction is to ascertain the intent of the Legislature. It is legislative intent which guides the interpretation of statutes.[11]
Based on this clear expression of legislative intent, it is my opinion that an organization authorized to sell "instant bingo" game tickets may only do so at locations at which real time bingo games are conducted.
Question Two
Pursuant to section 849.15, Florida Statutes, it is unlawful to possess or permit the operation of a slot machine as provided in section 849.16. Section 849.16, Florida Statutes, describes the prohibited machines or devices in the following terms:
"(1) Any machine or device is a slot machine or device within the provisions of this chapter if it is one that is adapted for use in such a way that, as a result of the insertion of any piece of money, coin, or other object, such machine or device is caused to operate or may be operated and if the user, by reason of any element of chance or of any other outcome of such operation unpredictable by him or her may:
(a) Receive or become entitled to receive any piece of money, credit, allowance, or thing of value, or any check, slug, token, or memorandum, whether of value or otherwise, which may be exchanged for any money, credit, allowance, or thing of value or which may be given in trade; or
(b) Secure additional chances or rights to use such machine, apparatus, or device, even though it may, in addition to any element of chance or unpredictable outcome of such operation, also sell, deliver, or present some merchandise, indication of weight, entertainment, or other thing of value."
Thus, if the receipt of a prize is dependent on any element of chance, the device would fall within the definition of a machine proscribed by section 849.15, Florida Statutes.
While the vending machine you have described does produce an instant bingo game ticket, the Florida Supreme Court and this office have previously determined that the incidental delivery of merchandise will not remove a machine from the proscriptions of section 849.15.[12] As the Court stated in Deeb v. Stoutamire
"The law denouncing slot machines defines them as devices so adapted that `as a result of the insertion' of a coin they are `caused to operate or may be operated, and by reason of any element of chance or of other outcome of such operation unpredictable by him, the user may receive or become entitled to receive any . . . thing of value' or anything which may be exchanged for something of value, such as money or merchandise, `or the user may secure additional . . . rights' to play, `even though [the machine] may, in addition to any element of chance or unpredictable outcome' deliver merchandise or entertainment."[13]
(e.s.)
The statutory definition of a slot machine has been amended since the Deeb decision was published but these amendments do not appear to have affected the operative language of the Court's holding.[14]
It appears that the principal function of the device you have described is gambling, that is, the user inserts money and the machine operates to provide the user with an instant bingo game ticket that, by reason of chance, may entitle the recipient to a money prize. The incidental receipt of merchandise, in this case, the instant game ticket, will not provide justification or authorization for the ownership, sale, or possession of a machine or device described in section 849.16, Florida Statutes.
Moreover, section 849.09, Florida Statutes, generally prohibits a person in this state from setting up or conducting a lottery, defined by the courts of this state as involving three elements: 1) a prize, 2) awarded by chance, 3) for consideration.[15] As discussed above, the purchase of a card from a vending machine that may, purely by chance, entitle the recipient to a prize would appear to satisfy all three elements of a lottery as prohibited by the statute.
I acknowledge that the Legislature has authorized the conduct of instant bingo by certain organizations. However, nothing in Chapter 849, Florida Statutes, addresses the automated sale of these tickets by a machine. Chapter 24, Florida Statutes, the "Florida Public Education Lottery Act," contains a legislatively devised plan for the use of "instant ticket vending machines" by the Department of the Lottery in conducting the state lottery. The department is authorized to adopt rules governing the establishment and operation of the lottery including rules governing "player-activated machine[s]." In the absence of any statement by the Legislature that would indicate that it contemplated the automated sale of instant bingo tickets, I cannot conclude that any machines used to dispense the tickets would fall outside the scope of sections 849.15 and 849.16, Florida Statutes. The conduct of bingo, or instant bingo, outside the very limited scope of the authorization contained in Chapter 849, Florida Statutes, is illegal.
Therefore, it is my opinion that a machine or device comes within the scope of section 849.16, Florida Statutes, if that machine dispenses an instant bingo game ticket that may, dependent on the element of chance, entitle the recipient to a prize. Further, the automated purchase of an instant bingo game card which awards prizes by chance may constitute a lottery pursuant to section 849.09, Florida Statutes.
Sincerely,
Bill McCollum
Attorney General
BM/tgh
[1] See s. 849.09, Fla. Stat., describing and prohibiting lotteries. Subsection (3) states that "[t]he provisions of this section do not apply to bingo as provided for in s. 849.0931" which authorizes the playing of bingo under the circumstances set forth therein.
[2] See Art. X, s. 7, Fla. Const. 
[3] See Art. X, s. 15, Fla. Const. 
[4] Section 849.08, Fla. Stat.
[5] See, e.g., Creash v. State, 179 So. 149 (Fla. 1938); Perlman v.State, 269 So. 2d 385 (Fla. 4th DCA 1972).
[6] See Perlman v. State, supra; and Greater Loretta ImprovementAssociation v. State ex rel. Boone, 234 So. 2d 665, 669 (Fla. 1970) ("[g]ambling in its various forms, and lotteries, are illegal under present law. Bingo or Guest games do not violate this statute, if played within the restrictions imposed by the Legislature."
[7] Section 849.0931(2)(a), Fla. Stat. And see s. 849.0931(1)(c), Fla. Stat., defining a "[c]haritable, non profit, or veterans' organization" to mean "an organization which has qualified for exemption from federal income tax as an exempt organization under the provisions of s. 501(c) of the Internal Revenue Code of 1954 or s. 528 of the Internal Revenue Code of 1986, as amended; which is engaged in charitable, civic, community, benevolent, religious, or scholastic works or other similar activities; and which has been in existence and active for a period of 3 years or more."
[8] Section 849.0931(3), Fla. Stat.
[9] See s. 1, Ch. 2007-228, Laws of Florida, providing the title for the act.
[10] See House Message Summary, CS/CS/SB 500, dated April 29, 2007, prepared by the Senate Committee on Regulated Industries, relating to House Amendment 1 — 876249.
[11] See State v. Webb, 398 So. 2d 820 (Fla. 1981) (legislative intent is the polestar by which the courts must be guided) and see Ops. Att'y Gen. Fla. 94-37 (1997) (paramount rule of statutory construction is to ascertain the intent of the Legislature), 86-24 (1986), and 85-74 (1985).
[12] Cf. Deeb v. Stoutamire, 53 So. 2d 873, 874 (Fla. 1951), and Op. Att'y Gen. Fla. 89-05 (1989), in which this office determined that a coin operated "crane game" qualifies as a slot machine or device within the meaning of Ch. 849, Fla. Stat.
[13] 53 So. 2d at 874 (Fla. 1951).
[14] SeeChs. 67-203, 77-275, and 84-247, Laws of Florida.
[15] See, e.g., Little River Theatre Corporation v. State ex rel.Hodge, 185 So. 855 (Fla. 1939).